CHARDON ET AL. *v.* FUMERO SOTO ET AL.

No. 82–271.  Argued March 23, 1983—Decided June 20, 1983

Stevens, J., delivered the opinion of the Court, in which Burger, C. J., and Brennan, Marshall, Blackmun, and O'Connor, JJ., joined. Rehnquist, J., filed a dissenting opinion, in which White and Powell, JJ., joined, *post*, p. 663.

*John G. DeGooyer* argued the cause for petitioners. With him on the briefs were *K. Martin Worthy, Stephen L. Humphrey, Hector Reichard De Cardona,* and *Eduardo Castillo Blanco.*

*Sheldon H. Nahmod* argued the cause for respondents. With him on the brief was *Jaime R. Nadal Arcelay.*

Justice Stevens delivered the opinion of the Court.

Petitioners, Puerto Rican educational officials, demoted respondents from nontenured supervisory positions to teaching or lower-level administrative posts in the public school system because of respondents' political affiliations. Shortly before Puerto Rico's 1-year statute of limitations would have expired, a class action was filed against petitioners on re-

spondents' behalf under 42 U. S. C. § 1983. Subsequently class certification was denied because the class was not sufficiently numerous. The parties agree that the statute of limitations was tolled during the pendency of the § 1983 class action, but they disagree as to the effect of the tolling.[1] Did the 1-year period begin to run anew when class certification was denied, or was it merely suspended during the pendency of the class action? We must decide whether the answer is provided by Puerto Rican law or by federal law.

On or after June 17, 1977, each of the 36 respondents[2] received a written notice of demotion. On Monday, June 19, 1978, Jose Ortiz Rivera, suing on behalf of respondents and various other demoted and discharged employees, filed a class action against petitioners asserting claims under 42 U. S. C. § 1983 and under certain Puerto Rican statutes. On August 21, 1978, the District Court denied class certification on the ground that the membership of the class was not so numerous that joinder was impracticable. App. 16a–17a. In January 1979, the respondents and a number of other unnamed class members filed individual actions under § 1983

---

[1] This opinion uses the word "tolling" to mean that, during the relevant period, the statute of limitations ceases to run. "Tolling effect" refers to the method of calculating the amount of time available to file suit after tolling has ended. The statute of limitations might merely be suspended; if so, the plaintiff must file within the amount of time left in the limitations period. If the limitations period is renewed, then the plaintiff has the benefit of a new period as long as the original. It is also possible to establish a fixed period such as six months or one year during which the plaintiff may file suit, without regard to the length of the original limitations period or the amount of time left when tolling began.

[2] Thirty-seven respondents were named in the petition for writ of certiorari. Questions 1 and 2 dealt with the status of 36 persons who had been unnamed plaintiffs in the class action filed by Jose Ortiz Rivera. Question 3 addressed the timeliness of Ortiz Rivera's filing. This Court limited its grant to Questions 1 and 2, 459 U. S. 987 (1982), which have no bearing on Ortiz Rivera's subsequent individual action. Since the petition was denied as to Question 3, Ortiz Rivera is not a respondent at this stage of the case, Brief for Petitioners 4, n. 2; the Court of Appeals has issued its mandate with respect to his case.

asserting the same constitutional claim that Ortiz Rivera had previously advanced on their behalf. App. 2a–4a.[3] Each of respondents' individual actions was filed more than one year after the claims accrued, even excluding the period during which the class action was pending, but less than one year after the denial of class certification. Thus, if the running of the limitations period was merely suspended by the class action, then respondents' actions are time-barred. If it began to run anew, these actions are timely.

Fifty-five individual actions were consolidated for trial on the liability issue in January 1981. The jury found against petitioners, and the District Court entered judgment ordering reinstatement with backpay. 514 F. Supp. 339 (PR 1981); App. 108a–111a, 114a–116a, 121a–124a. On appeal, the Court of Appeals modified the remedy in some respects, reversing the award of backpay on Eleventh Amendment grounds and ordering some of the individual cases dismissed as time-barred. It rejected petitioners' argument that the claims of the 36 respondents were barred by the statute of limitations. *Rivera Fernandez* v. *Chardon*, 681 F. 2d 42 (CA1 1982); App. 158a.[4]

---

[3] A number of companion cases, all involving plaintiffs who had received notices of demotion or discharge prior to June 19, 1977, were also filed in January 1979. The District Court dismissed this group of complaints as untimely, but the Court of Appeals reversed on the ground that their causes of action had not accrued when they received notice, only when their demotions or discharges became effective. *Rivera Fernandez* v. *Chardon*, 648 F. 2d 765 (CA1 1981). That holding was, in turn, reversed by this Court after the decision in *Delaware State College* v. *Ricks*, 449 U. S. 250 (1980). See *Chardon* v. *Fernandez*, 454 U. S. 6 (1981).

[4] For 28 of the respondents, who received notice on or after June 19, 1977, there is no dispute that the 1-year limitations period had not yet expired when the class action was filed on Monday, June 19, 1978. The other eight respondents received notice on June 17, 1977, a date more than a calendar year prior to June 19, 1978. In its initial judgment, the Court of Appeals ordered dismissal of these eight cases. App. 156a–157a. On petition for modification of judgment, the respondents argued that, because Saturday, June 17, and Sunday, June 18, 1978, are excluded from computa-

Because there is no federal statute of limitations applicable to § 1983 claims, the Court of Appeals looked to Puerto Rican law to determine what the limitations period is, whether that period was tolled, and the effect of the tolling. The parties do not dispute the court's conclusion that civil rights actions are governed by the 1-year period specified in P. R. Laws Ann., Tit. 31, § 5298(2) (1968). Nor do petitioners challenge the court's conclusion that the statute was tolled during the pendency of the *Rivera* class action, although they do disagree with the court's reasons.

The Court of Appeals noted that in Puerto Rico it is well settled that the filing of an action on behalf of a party tolls the statute with regard to that party's identical causes of action. P. R. Laws Ann., Tit. 31, § 5303 (1968). It recognized, however, that the Supreme Court of Puerto Rico had not ruled on the question whether a class action would toll the statute for identical claims of the unnamed plaintiffs. It noted that Puerto Rico had modeled its class-action procedures after the federal practice, and that in *American Pipe & Construction Co.* v. *Utah,* 414 U. S. 538 (1974), this Court had interpreted the Federal Rules of Civil Procedure to permit a federal statute of limitations to be tolled between the filing of an asserted class action and the denial of class certification. It concluded that, as a matter of Puerto Rican law, the Puerto Rican Supreme Court would also hold that the statute of limitations was tolled as to unnamed plaintiffs during the pendency of a class action. 681 F. 2d, at 50.[5]

___

tion under Puerto Rican law, the filing of the class action on Monday, June 19, was timely for those eight respondents. *Id.,* at 158a. The Court of Appeals modified its judgment accordingly, and explained its denial of rehearing on that issue by referring to Rule 6(a) of the Federal Rules of Civil Procedure. App. 161a. Neither the source of applicable law nor the merits of the issue is before us for decision. Tr. of Oral Arg. 4.

[5] The correctness of this interpretation of Puerto Rican law is not before us. *Id.,* at 18. In any event, in "dealing with issues of state law that enter into judgments of federal courts, we are hesitant to overrule decisions by federal courts skilled in the law of particular states unless their

In deciding what effect the tolling would have, however, the court did not apply the same rule as this Court had applied in *American Pipe*. In that case the controlling limitations period was established by a federal statute, the Clayton Act, that expressly provided for suspension when the period was tolled, 414 U. S., at 560–561. In this § 1983 case, however, the Court of Appeals concluded that Puerto Rican law determined the length of the applicable statute of limitations, governed whether the limitations period would be tolled during the pendency of the class action, and established the effect of the tolling. Under the law of Puerto Rico the statute of limitations begins to run anew when tolling ceases; the plaintiff benefits from the full length of the applicable limitations period. See *Feliciano* v. *Puerto Rico Aqueduct & Sewer Auth.*, 93 P. R. R. 638, 644 (1966); *Heirs of Gorbea* v. *Portilla*, 46 P. R. R. 279, 284 (1934).[6] Recognizing the difference between the common-law rule of suspension and the Puerto Rican "running-anew rule," the Court of Appeals concluded that applying the local rule would not violate any federal policy. The court further reasoned that its conclusion was consistent with the policies of repose and federalism that this Court had identified in its decisions addressing statute of limitations questions. 681 F. 2d, at 50. We granted certiorari. 459 U. S. 987 (1982).

I

The federal civil rights statutes do not provide for a specific statute of limitations, establish rules regarding the tolling of the limitations period, or prescribe the effect of tolling. Under 42 U. S. C. § 1988, the federal cause of action is governed by appropriate "laws of the United States," but if such laws are unsuitable or inadequate, state-law rules are bor-

---

conclusions are shown to be unreasonable." *Propper* v. *Clark*, 337 U. S. 472, 486–487 (1949), quoted in *Bishop* v. *Wood*, 426 U. S. 341, 346, n. 10 (1976).

[6] Petitioners do not question this proposition of Puerto Rican law. Tr. of Oral Arg. 10.

656

rowed unless a particular state rule is "inconsistent with the Constitution and laws of the United States."[7]   Petitioners argue that *American Pipe & Construction Co.* v. *Utah, supra,* established a federal rule of decision that requires suspension rather than renewal whenever a class action in federal court tolls the statute of limitations.   Accordingly, they contend that neither § 1988 nor our recent ·decision in *Board of Regents* v. *Tomanio,* 446 U. S. 478 (1980), justified the Court of Appeals' application of the Puerto Rican renewal rule.   This argument, by reading more into our decision in *American Pipe* than the Court actually decided, fails to give full effect to *Tomanio.*

We begin by restating briefly the principles set forth in *Board of Regents* v. *Tomanio.*   In that case the Court held that the plaintiff's § 1983 claim was barred by New York's 3-year statute of limitations, because New York law did not provide for tolling of the statute during the pendency of a related, but independent cause of action.   Indeed, "resolution of that issue [was] virtually foreordained in favor of petitioners by our prior cases."   446 U. S., at 480.   Under the reasoning of *Robertson* v. *Wegmann,* 436 U. S. 584 (1978); *Johnson* v. *Railway Express Agency, Inc.,* 421 U. S. 454 (1975); and *Monroe* v. *Pape,* 365 U. S. 167 (1961), the Court explained, federal courts were "obligated not only to apply the analogous New York statute of limitations to respondent's federal constitutional claims, but also to apply the New York

---

[7] Title 42 U. S. C. § 1988 provides:

"[The federal civil rights statutes] shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause . . . ."

rule for tolling that statute of limitations." 446 U. S., at 483.

We noted that in 42 U. S. C. § 1988 Congress had plainly instructed the federal courts to refer to state law when federal law provides no rule of decision for actions brought under § 1983, *id.*, at 484. Because the "chronological length of the limitation period is interrelated with provisions regarding tolling," we reasoned that the practice of "borrowing" state statutes of limitations "logically include[s] rules of tolling." *Id.*, at 485.[8] Finally, we concluded that no federal policy—deterrence, compensation, uniformity, or federalism—was offended by the application of state tolling rules. In light of Congress' willingness to rely on state statutes of limitations in civil rights actions, we specifically rejected the argument that the federal interest in uniformity justified displacement of state tolling rules.[9]

---

[8] We quoted the following passage from *Johnson* v. *Railway Express Agency, Inc.*, 421 U. S. 454, 463–464 (1975):

"Any period of limitation . . . is understood fully only in the context of the various circumstances that suspend it from running against a particular cause of action. Although any statute of limitations is necessarily arbitrary, the length of the period allowed for instituting suit inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones. In virtually all statutes of limitations the chronological length of the limitation period is interrelated with provisions regarding tolling, revival, and questions of application. In borrowing a state period of limitation for application to a federal cause of action, a federal court is relying on the State's wisdom in setting a limit, and exceptions thereto, on the prosecution of a closely analogous claim." 446 U. S., at 485–486; see also *id.*, at 487–488.

[9] We quoted the following passage from *Robertson* v. *Wegmann*, 436 U. S. 584, 594, n. 11 (1978):

"[W]hatever the value of nationwide uniformity in areas of civil rights enforcement where Congress has not spoken, in the areas to which § 1988 is applicable Congress has provided direction, indicating that state law will often provide the content of the federal remedial rule. This statutory reliance on state law obviously means that there will not be nationwide uniformity on these issues." 446 U. S., at 489.

## II

It is true, as petitioners argue, that *Tomanio* did not involve a class action, nor did it present any claim that an established federal rule of decision governed the tolling of the statute of limitations, making resort to state law unnecessary. Petitioners contend that in *American Pipe* this Court "established a uniform federal procedural rule applicable to class actions brought in the federal courts." Brief for Petitioners 13. In petitioners' view, that federal rule encompasses two requirements: (1) the statute of limitations is tolled by the filing of an asserted class action, and (2) if class certification is subsequently denied because the asserted class is insufficiently numerous, then the limitations period has merely been suspended; it does not begin to run anew. Petitioners, respondents, and the Court of Appeals all agree that the statute of limitations was tolled during the period between the filing of Jose Ortiz Rivera's action on behalf of the class on June 19, 1978, and the District Court's denial of class certification on August 21, 1978.[10] We must examine the reasoning of *American Pipe,* however, to determine whether that decision embodies the second requirement that petitioners urge us to recognize.

In *American Pipe* the Court held that the antitrust treble-damages claims asserted by a group of municipalities and other public agencies in Utah were not time-barred. Although the claims had arisen in the early 1960's, they were not foreclosed by the 4-year period of limitations prescribed in § 4B of the Clayton Act[11] because the statute had been tolled on three successive occasions: from March 10, 1964, to June 19, 1964, while federal criminal charges were pending

---

[10] Brief for Petitioners 12–15; Reply Brief for Petitioners 1–2; Brief for Respondents 6–9, 17; 681 F. 2d, at 49; see *supra,* at 654.

[11] Section 4B of the Clayton Act, 69 Stat. 283, as amended, 15 U. S. C. § 15b, provides in pertinent part as follows:

"Any action to enforce any cause of action [under the antitrust laws] shall be forever barred unless commenced within four years after the cause of action accrued."

against the defendants; from June 23, 1964, until May 24, 1968, while a civil injunctive proceeding filed by the Federal Government was pending; and from May 13, 1969, until December 4, 1969, while a class action brought by the State of Utah was pending. During the two earlier periods when Federal Government litigation was pending, and for one year thereafter, the Clayton Act expressly provided for tolling of the uniform federal statute of limitations.[12] The Court held that the subsequent class action had also tolled the statute for the claims of the unnamed plaintiffs until class certification was denied.

The Court reasoned that, under the circumstances, the unnamed plaintiffs should be treated as though they had been named plaintiffs during the pendency of the class action. Otherwise, members of a class would have an incentive to protect their interests by intervening in the class action as named plaintiffs prior to the decision on class certification—a "needless duplication of motions" that would "deprive Rule 23 class actions of the efficiency and economy of litigation which is a principal purpose of the procedure." 414 U. S., at 553–554; see id., at 555–556. The Court explained that tolling the limitations period during the pendency of an antitrust class action did not impair the policies underlying statutes of limitations. Id., at 554–555.

In order to determine "the precise effect the commencement of the class action had on the relevant limitation period," the Court referred to the terms of the underlying statute of limitations. It stated that § 5(b) of the Clayton Act suspends the statute of limitations during the pendency of Federal Government antitrust litigation based on the same subject matter. By analogy, the Court concluded that sus-

---

[12] Section 5(b) of the Clayton Act, 38 Stat. 731, as amended, 15 U. S. C. § 16(i), provides:

"Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, . . . the running of the statute of limitations in respect to every private or State right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter . . . ."

pension would also be appropriate during the pendency of an asserted federal class action prior to denial of certification. *Id.*, at 560–561. Since suspension was adequate to preserve all of the plaintiffs' claims—they were filed only eight days after the denial of class certification—there was no need to consider whether any different rule might have been appropriate.[13]

In *American Pipe*, federal law defined the basic limitations period, federal procedural policies supported the tolling of

---

[13] Although some federal statutes provide for suspension, see *post*, at 666, and n. 2, other statutes establish a variety of different tolling effects. See, *e. g.*, 12 U. S. C. § 1728(c) (actions against Federal Savings and Loan Insurance Corporation for payment of insurance claims; 3-year limitations period from date of default, unless conservator of the insured institution first recognizes and then denies the validity of a claim, in which event the action may be brought within two years of denial); 15 U. S. C. § 16(i), see n. 12, *supra* (private actions under antitrust laws); 15 U. S. C. § 714b(c)(2) (actions against Commodity Credit Corporation; 6-year limitations period, unless the plaintiff has been under legal disability or beyond the seas at the time the right accrued, in which case the suit must be brought within three years after the disability ceases or within six years after the accrual of the cause of action, whichever is longer); 15 U. S. C. § 1691e(f) (actions under Equal Credit Opportunity Act; 2-year limitations period, except that if an agency enforcement action or suit by the Attorney General is filed during that period, any applicant who has been a victim of the alleged discrimination may bring suit not later than one year after the commencement of that action); 28 U. S. C. § 2415(e) (various limitations periods for actions for money damages and recovery of debts brought by the United States; if any such action is timely filed and dismissed without prejudice, the action may be recommenced within one year after such dismissal, regardless of whether the action would otherwise then be time-barred); 46 U. S. C. § 1292 (suits on claims for war risk insurance; 2-year limitations period, but if an administrative claim is filed, the period is suspended until the claim is administratively denied *and* for 60 days thereafter); 49 U. S. C. §§ 16(3)(c), (d) (actions against railroads for overcharges; 3-year limitations period, but if claim for the overcharge has been presented in writing to the carrier within the limitations period, the period for bringing suit is extended to include six months from the time the carrier gives notice in writing to the claimant disallowing the claim, and if the carrier brings suit to recover charges in respect of the same transportation service during the limitations period, the limitations period is extended to include 90 days from the time such action is begun); 49 U. S. C. §§ 908(f)(1)(C), (D) (same provision with regard to common carriers by water).

the statute during the pendency of the class action, and a particular federal statute provided the basis for deciding that the tolling had the effect of suspending the limitations period. No question of state law was presented. In a § 1983 action, however, Congress has specifically directed the courts, in the absence of controlling federal law, to apply state statutes of limitations and state tolling rules unless they are "inconsistent with the Constitution and laws of the United States." 42 U. S. C. § 1988. *American Pipe* does not answer the question whether, in a § 1983 case in which the filing of a class action has tolled the statute of limitations until class certification is denied, the tolling effect is suspension rather than renewal or extension of the period. *American Pipe* simply asserts a federal interest in assuring the efficiency and economy of the class-action procedure. After class certification is denied, that federal interest is vindicated as long as each unnamed plaintiff is given as much time to intervene or file a separate action[14] as he would have under a state savings statute applicable to a party whose action has been dismissed for reasons unrelated to the merits, or, in the absence of a statute, the time provided under the most closely analogous state tolling statute.

The reasoning of *American Pipe* is thus compatible with the rationale of *Tomanio*, and the Court of Appeals' decision on the tolling effect of the class action in this case is consistent with both. The Court of Appeals applied the Puerto Rican rule that, after tolling comes to an end, the statute of limitations begins to run anew. Since the application of this state-law rule gives unnamed class members the same protection as if they had filed actions in their own names which were subsequently dismissed, the federal interest set forth in *American Pipe* is fully protected.[15]

---

[14] The benefit of tolling applies whether an unnamed plaintiff intervenes in the named plaintiff's suit after denial of class certification or files his or her own separate action. *Crown, Cork & Seal Co.* v. *Parker, ante,* p. 345.

[15] On the other hand, if a party received the benefit of Puerto Rico's renewal rule only by intervening as a named plaintiff in the class action

The Court of Appeals correctly rejected the argument that *American Pipe* establishes a uniform federal rule of decision that mandates suspension rather than renewal whenever a federal class action tolls a statute of limitations. As we wrote in *Robertson* v. *Wegmann,* "§ 1988 quite clearly instructs us to refer to state statutes; it does not say that state law is to be accepted or rejected based solely on which side is advantaged thereby." 436 U. S., at 593. Congress has decided that § 1983 class actions brought in different States, like individual actions under § 1983, will be governed by differing statutes of limitations and differing rules regarding tolling and tolling effect unless those state rules are inconsistent with federal law. Until Congress enacts a federal statute of limitations to govern § 1983 litigation, comparable to the statute it ultimately enacted to solve the analogous problems presented by borrowing state law in federal antitrust litigation,[16] federal courts must continue the practice of "limitations borrowing" outlined in *Tomanio.*

The judgment of the Court of Appeals is

*Affirmed.*

---

before the court's decision whether to certify the class, but was limited to suspension if he remained an unnamed class member, he would have an incentive to protect his interests by creating the very multiplicity and needless duplication against which the Court warned in *American Pipe.*

[16] Act of July 7, 1955, ch. 283, §§ 1 and 2, 69 Stat. 283. See H. R. Rep. No. 422, 84th Cong., 1st Sess., 1 (1955) ("Heretofore, such actions have been controlled by State law on the subject, leading to widespread variations from jurisdiction to jurisdiction as to the time within which an injured party may institute such a suit, as well as considerable confusion in ascertaining the applicable State law"); S. Rep. No. 619, 84th Cong., 1st Sess., 5 (1955) ("It is one of the primary purposes of this bill to put an end to the confusion and discrimination present under existing law where local statutes of limitations are made applicable to rights granted under our Federal laws"); *id.,* at 7 (letter from Attorney General) ("Currently, private antitrust action is needlessly complicated by issues such as which State's statute of limitations apply, the events from which such statute run[s], and the circumstances under which it may be [tolled]. Finally, varying periods of limitation encourage 'forum-shopping' and seem ill-suited for enforcement of a uniform Federal policy").

JUSTICE REHNQUIST, with whom JUSTICE WHITE and JUSTICE POWELL join, dissenting.

Title 42 U. S. C. § 1988 embodies a congressional determination that the laws of the several States provide the most suitable procedural and remedial rules for application in actions brought under the federal civil rights laws.   In the words of the statute, "in all cases [brought under the federal civil rights laws] where [federal laws] are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held . . . shall be extended to and govern the said courts in the trial and disposition of the cause . . . ."

We frequently have recognized "the generally interstitial character of federal law," *Richards* v. *United States,* 369 U. S. 1, 7 (1962).   Because of this, federal courts frequently must look to "the common law, as modified and changed by the constitution and statutes of the State wherein the court" is situated.   If, however, there is federal law "adapted to the object" of the civil rights laws, § 1988 commands that federal courts apply that law in § 1983 actions.

The question in this case is whether there is any federal rule of law applicable to the tolling of limitations periods during the pendency of a class action brought under Federal Rule of Civil Procedure 23.   If there is, then we must depart from the general rule of reference to state law in actions brought under the civil rights laws.   This inquiry turns principally on the meaning of our decision in *American Pipe & Construction Co.* v. *Utah,* 414 U. S. 538 (1974).   While the Court adopts a plausible, albeit narrow, reading of the opinion in that case, I believe the opinion is more fairly read in a somewhat broader manner.   Adopting this construction, I conclude that the decision recognizes a federal rule of tolling applicable to class actions brought under Federal Rule of

Civil Procedure 23, and that this rule is made applicable by § 1988 to claims brought under § 1983.

In *American Pipe* the Court rejected the claim that antitrust claims brought by various Utah public agencies and municipalities was barred by the 4-year limitations period of § 4B of the Clayton Act, reasoning that the running of this period had been tolled on three occasions. As to two of these occasions, involving periods during which federal litigation was pending, the Court's reasoning simply applied § 5(b) of the Clayton Act. Section 5(b) explicitly addressed the effect of pending federal litigation, stating unambiguously that "[w]henever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, . . . the running of the statute of limitations in respect to every private right of action arising under said laws . . . shall be suspended during the pendency thereof and for one year thereafter." 38 Stat. 731, as amended, 15 U. S. C. § 16(i). The first two periods in which *American Pipe* held that § 4B had been tolled followed simply from a straightforward application of § 5(b).

As to the third period in which the limitations period was found to be tolled, however, the Clayton Act was utterly silent. The period in question was one in which a class action brought by the State of Utah had been pending. The question in *American Pipe* was whether the pendency of this class action warranted tolling of the Clayton Act's limitations period as to unnamed plaintiffs in the class. As noted previously, the Clayton Act provided not the slightest guidance on the question whether the pendency of the class action should have had a tolling effect.

Despite the silence of the Clayton Act, the Court concluded that § 4B had been tolled. Since the Clayton Act plainly did not address the question before it, and since the Court made no reference at all to state law, the source of the tolling rule applied by the Court was *necessarily* Rule 23. Any doubt as to this fact is removed by the Court's lengthy discussion of

the history, purposes, and intent of the Rule. Likewise, our subsequent decisions have reflected this understanding of the basis for the Court's decision in *American Pipe*. See, *e. g.*, *Johnson* v. *Railway Express Agency, Inc.*, 421 U. S. 454, 467, n. 12 (1975) ("In the light of the history of Fed. Rule Civ. Proc. 23 and the purposes of litigatory efficiency served by class actions, we concluded that the prior filing had a tolling effect").

In interpreting Rule 23 to contain a rule that, during the pendency of a class action, underlying statutes of limitations would be tolled as to individual class members, the Court also addressed the more general question of what effect a decision that the class action could not properly be maintained would have on the tolling of the limitations period. Again, reflecting the fact that it was fashioning a general federal tolling rule grounded on Rule 23, the Court stated:

> "We are convinced that the rule most consistent with federal class action procedure must be that the commencement of a class action *suspends* the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U. S., at 554 (emphasis added).

There can be little question but that the Court fashioned a rule "consistent with federal class action procedure" requiring suspension of periods of limitation during the pendency of class actions. To be sure, the Court alluded to the fact that § 5(b) of the Clayton Act provided for "suspension" of the tolling period, rather than some other effect, but the Court rightly did not rely solely on this provision—which admittedly was entirely inapplicable in the case before it—in fashioning its general rule of tolling under Rule 23. Rather, it spoke more broadly, stating that the "concept" in § 5(b) requires the conclusion that a pending class action "*suspend[s]* the running of the limitation period." *Id.*, at 561 (emphasis

added).    Since there is a federal rule of tolling in the special area of class actions, this rule should be applied.

The Court today studiously ignores the foregoing statements from *American Pipe*, as well as the clear inapplicability of § 5(b) to the question decided in *American Pipe*. Instead, it offers the argument that "[s]ince suspension was adequate [in *American Pipe*] to preserve all of the plaintiffs' claims . . . there was no need to consider whether any different rule might have been appropriate." *Ante*, at 660.    The more orthodox inquiry, however, would seem to be what the Court actually decided then, not what we now think it needed to decide.    And, as the discussion above plainly demonstrates, *American Pipe* concluded that Rule 23 contains a tolling rule that suspends (but does nothing more) the running of limitations periods during the pendency of class actions.[1]

This determination that the federal rule under Rule 23 is that the pendency of a class action simply *suspends* the running of a statute of limitations is not the least bit unusual. Indeed, in many areas of federal law mere suspension is the rule.[2]    Moreover, in areas aside from class actions, the

---

[1] The Court correctly recognizes that *Board of Regents* v. *Tomanio*, 446 U. S. 478 (1980), is distinguishable.    That case did not involve a class action, and thus the Court had no occasion to consider whether Rule 23 creates a federal tolling rule, or the character of that rule.    Hence, there was "a void . . . in federal statutory law," *id.*, at 483, and state law was called upon to fill the void.    Owing to *American Pipe* and its interpretation of Rule 23, there is no comparable void in this case, and federal law is therefore applicable.

[2] See, *e. g.*, 5 U. S. C. § 8122(d) (limitations period does not "run against an incompetent individual while he is incompetent"); 19 U. S. C. § 1621 (time in which violator is outside Nation "shall not be reckoned within this period of limitation"); 22 U. S. C. § 817(c) (suspension of limitations periods in malpractice actions by certain federal employees during pendency of specified suits); 28 U. S. C. § 1498 (copyright claims by Government employees suspended during certain periods); 29 U. S. C. § 255(d) (limitations period of Portal-to-Portal Pay Act "shall be deemed suspended" in certain instances); 45 U. S. C. § 56 (period of limitations under Federal Employ-

Court has recognized that federal tolling rules apply to state statutes of limitations. See, *e. g., Holmberg* v. *Armbrecht*, 327 U. S. 392 (1946) (general federal principles of equity must be applied by federal courts in actions involving federal claims, even where state statutes of limitations are borrowed).

The Court is apparently well aware that by rejecting the claim that Rule 23 reflects a uniform federal tolling rule it encourages needless litigation regarding what state tolling rule applies. Indeed, in this case the Court of Appeals frankly admitted that "there is no discernible state rule" to be applied. *Fernandez* v. *Chardon*, 681 F. 2d 42, 50 (CA1 1982). In other situations, more than one state rule may seem applicable. It is scarcely a desirable state of affairs for federal courts to spend their time deciding how state courts might decide state tolling rules operate. These concerns are particularly acute owing to the fact that the question at issue is what statute of limitations ought to be applied. Few areas of the law stand in greater need of firmly defined, easily applied rules than does the subject of periods of limitations. A single, uniform federal rule of tolling would provide desirable certainty to both plaintiffs and defendants in § 1983 class actions.

Finally, it is useful to consider the application of the Court's analysis in a situation not far removed from the present case. If the law of a particular State was that the pendency of a class action did not toll the statute of limitations as to unnamed class members, there seems little question but that the federal rule of *American Pipe* would nonetheless be applicable. Having tolled the running of the

---

ers' Liability Act; *Burnett* v. *New York Central R. Co.*, 380 U. S. 424 (1965)); 46 U. S. C. § 745 (limitations period suspended during pendency of administrative actions; see *Northern Metal Co.* v. *United States*, 350 F. 2d 833 (CA3 1965); *Kinman* v. *United States*, 139 F. Supp. 925 (ND Cal. 1956)); 50 U. S. C. App. § 33 (in computing expired time "there shall be excluded" time when specified actions were pending). Cf. *Hanger* v. *Abbott*, 6 Wall. 532 (1868) (suspension of state statute of limitations).

applicable state statute of limitations, the federal court would be required to decide what effect denial of class certification would have. The logical source of law, of course, would be the general federal rule, expressed in *American Pipe* and applied to toll the running of the period in the first place. The Court, however, would apparently have the trial judge look to state law. Such a course would obviously be more than a little ironic—the inquiry would appear to be, if state law *did* have a class-action tolling rule, which it *does not*, what would state law say with respect to one aspect of that rule's effect? Such an inquiry would be more appropriate in *Alice in Wonderland* than as a serious judicial undertaking.

Because the Court partially rejects a rule of law that *American Pipe* plainly set forth, because it reaches a result that can only encourage needless litigation and uncertainty, and because its analysis leads to anomalous results, I respectfully dissent.