**Michael CORRENTE and Richard Alan Burke**

**v.**

**STATE OF RHODE ISLAND, DEPARTMENT OF CORRECTIONS, Bruce D. Sundlun, Governor, Sued in his Official Capacity, George Vose, Director of the Department of Corrections, Sued in his Official Capacity, Rhode Island Brotherhood of Correctional Officers, John Sabalewski, President, Sued in his Official and Personal Capacity, John Doe, Secretary, Sued in his Official Capacity, and Alan Silverman, Treasurer, Sued in his Official Capacity, William Bovi, First Vice President, Arthur Mardox, Second Vice President, Captain Charles Dede, Captain Julio Costa, Lieutenant Kenneth Rivard, Lieutenant Alan Reedy, Lieutenant Richard Boudreau, and Deputy Ronald Detonnancourt.**

**Civ. A. No. 90–0524–L.**

United States District Court,
D. Rhode Island.

March 21, 1991.

Arlene Violet, Barrington, R.I., for plaintiffs.

Dorothy Fobert, Atty. General's Dept., Providence, R.I., Gerard Cobleigh, Warwick, R.I., George Cappello, Dept. of Corrections, Cranston, R.I., for defendants.

MEMORANDUM AND ORDER

LAGUEUX, District Judge.

Plaintiffs Michael Corrente and Richard Alan Burke are correctional officers at the Rhode Island Adult Correctional Institutions ("ACI"). They allege that in Novem-

ber of 1989 an inmate at the ACI was assaulted by fellow correctional officers. Plaintiffs contend that they reported the incident and identified the officers responsible for the assault. As a consequence of this exercise of their first amendment rights, plaintiffs allege that they have been subjected to harassment and threats.

There are two groups of defendants: the State defendants and the Brotherhood defendants. The State defendants are the Governor of Rhode Island and the Director of the State Department of Corrections, both sued in their official capacity.[1] The Brotherhood defendants are various officers and individual members of the Rhode Island Brotherhood of Correctional Officers (the "Brotherhood"), as well as the Brotherhood itself.

Plaintiffs filed suit under 42 U.S.C. Section 1983 claiming that defendants punished them for exercising their first amendment rights, and thus violated their civil rights. Plaintiffs also claim that defendants conspired to interfere with their civil rights in violation of 42 U.S.C. Section 1985.[2] For relief, plaintiffs pray for compensatory damages, punitive damages, attorneys' fees, and costs. Plaintiffs also seek an injunction ordering defendants to cease the harassment and mandating the State defendants to transfer the plaintiffs to a lateral position in another department.

All defendants moved to dismiss the Section 1983 and 1985 claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The 12(b)(6) motions to dismiss for failure to state a claim under Section 1983 are granted with respect to the Governor and the following Brotherhood defendants: John Sabalewski, President; John Doe, Secretary; Alan Silverman, Treasurer; William Bovi, First Vice President; and Captain Julio Costa. Plaintiffs have stated a claim under Section 1983 with respect to the remaining defendants, and their 12(b)(6) motions to dismiss are denied. Each defendant's motion to dismiss the Section 1985 claim is granted.

## DISCUSSION

When passing on motions to dismiss under Rule 12(b)(6), this Court must accept the facts alleged in the complaint as true and construe those facts in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Knight v. Mills,* 836 F.2d 659, 664 (1st Cir.1987). Furthermore, it is well-established that a Rule 12(b)(6) motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). This liberal standard is mandated to effectuate the purposes of Rule 8(a) of the Federal Rules of Civil Procedure which requires in part only a "short and plain statement of the claim showing that the pleader is entitled to relief."

The standard for determining whether a complaint satisfactorily pleads a

1. Edward D. DiPrete was Governor and Donald R. Ventetuolo was Director of Corrections during the period of the alleged harassment and in December of 1990 when the third amended complaint was filed. Both officials have since departed their offices. Rule 25 of the Federal Rules of Civil Procedure provides that "When a public officer is a party to an action in an official capacity and during its pendency ... ceases to hold office, ... the officer's successor is automatically substituted as a party." Bruce D. Sundlun is Rhode Island's current governor and George Vose is the Director of the Department of Corrections. Thus, they are now both defendants in their official capacity in this action.

2. Plaintiffs' complaint also alleges two state law claims: libel and violation of the Rhode Island Whistleblower Act. Defendants only challenge the viability of these claims on jurisdictional grounds. They argue that this Court should not exercise jurisdiction over state claims where federal claims are dismissed prior to trial. The Court agrees. *Jones v. State of Rhode Island,* 724 F.Supp. 25, 36 (D.R.I.1989). Therefore, the Court will grant the 12(b)(1) motions to dismiss the state law claims made by those defendants against whom the federal claims are dismissed. The Court will exercise jurisdiction over state law claims against those defendants against whom a sufficient federal claim is stated. Because defendants did not challenge the sufficiency of the state law claims, the Court expresses no opinion on that subject.

Section 1983 claim was set out by the First Circuit in *Dewey v. University of New Hampshire,* 694 F.2d 1, 3 (1st Cir.1982), *cert. denied,* 461 U.S. 944, 103 S.Ct. 2121, 77 L.Ed.2d 1301 (1983). There the Court stated:

> We require more than conclusions or subjective characterizations. We have insisted on at least the allegation of a minimal factual setting. It is not enough to allege a general scenario which could be dominated by unpleaded facts....
>
> ... Therefore, although we must ask whether the 'claim' put forth in the complaint is capable of being supported by any conceivable set of facts, we insist that the claim at least set forth minimal facts, not subjective characterizations, as to who did what to whom and why.

*Dewey,* 694 F.2d at 3.

*See also Culebras Enters. Corp. v. Rivera Rios,* 813 F.2d 506, 518–19 (1st Cir.1987) ("This court has not looked with favor on complaints which, trading on mere conclusory charges, fail to set out the specifics of a tenable claim.").

A. *The Section 1983 Claim*

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.
>
> 42 U.S.C. § 1983.

In order to make out a Section 1983 claim the entity responsible for the alleged deprivation of civil rights must be a "person" within the terms of the statute. In addition, two fundamental allegations must be pleaded in conformity with the *Dewey* standard. First, the person must have allegedly acted under color of state law. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). Second, the person's action must have allegedly deprived another of rights, privileges, or immunities secured by the federal Constitution or federal laws. *Id.*

1. State Defendants

In *Will v. Michigan Department of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989), the Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." This statement seemingly compels one conclusion regarding the sufficiency of the Section 1983 claim alleged against the two State defendants: the plaintiffs have failed to state a claim upon which relief can be granted because the Governor and the Director are not "persons" under Section 1983. However, the Supreme Court's construction of "person" in *Will* is more elaborate than the quoted phrase above indicates. In a footnote, the Court stated that "Of course a State official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will,* 491 U.S. at 71 n. 10, 109 S.Ct. at 2311 n. 10 (quoting *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985)).

In this case, plaintiffs seek both compensatory and prospective injunctive relief from the state officials. *Will* bars the claim for compensatory relief; it does not affect the claim for injunctive relief. In addition, plaintiffs' claim for injunctive relief from the state officials is not barred by the Eleventh Amendment. *See Kentucky v. Graham,* 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106, n. 14, 87 L.Ed.2d 114 (quoted above in *Will*); *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) (suit challenging the constitutionality of a state official's action is not one against the state).

■ Both State defendants obviously were acting under color of state law. The key issue here is whether plaintiffs have pleaded, with particularity, facts which objectively allege that the State defendants deprived them of rights, privileges, or immunities secured by the Constitution or laws of the United States.

Plaintiffs allege nineteen incidents of harassment or threats. Defendant Governor is implicated in two of these incidents as follows:

> 6(c) On or about December 11, 1989, plaintiff Burke was handed an envelope containing the cartoon attached hereto and incorporated by reference therein. Plaintiff learned that defendant Dede and defendant Rivard with the union's blessing had distributed the aforesaid cartoon throughout the area at the prison known as LSC. Defendant officials of the State of Rhode Island took no action to have the cartoons removed, but in fact allowed the cartoons to be posted in various public places for hours without directing that they be taken down.
>
> 6(*l*) Because of the constant harassment the plaintiffs herein were forced to leave work. After a period of time out, they returned at the behest of the defendant [Director]. In addition, the plaintiffs herein reported all the aforesaid to defendant [Governor] and requested his intervention. Defendant [Governor], despite being aware of an internal investigation that cleared the plaintiffs and found the individuals identified by the plaintiffs as being the individuals who assaulted the inmate countenanced the discrimination by failing to act.

These allegations fall far short of the particularity mark required in Section 1983 cases. Plaintiffs' assertion that the Governor knew of and acquiesced in the harassment is purely conclusory. The Third Circuit reached a similar result in *Rode v. Dellarciprete,* 845 F.2d 1195 (3d Cir.1988). In *Rode,* a state employee sued a bevy of defendants alleging retaliatory harassment in response to her exercise of first amendment rights. In affirming the District Court's granting of the motion to dismiss of the Governor and Attorney General, the Third Circuit stated:

> [Plaintiff] also alleges that defendant [Governor] had personal knowledge of the harassment as a result of grievances she filed with his office of administration. These allegations are simply insufficient to show that [the Governor] had actual knowledge of [plaintiff's] alleged harassment. In a large state employing many thousands of employees, a contrary holding would subject the Governor to potential liability in any case in which an aggrieved employee merely transmitted a complaint to the Governor's office of administration or to the Lieutenant Governor's office.

*Rode,* 845 F.2d at 1207.

Although Rhode Island is not a large state, the particularity requirement serves the same purpose here. Plaintiffs simply have not shown that defendant Governor knew of the hanging of the cartoon or of the other alleged incidents of harassment. Plaintiffs merely allege "all the aforesaid" was reported to the Governor, failing to state exactly what was reported to him and, more importantly, that he actually knew of the harassment. Because such conclusory allegations are insufficient to state a claim under Section 1983, the Governor's motion to dismiss must be granted.

■ Defendant Director is implicated in eight incidents of harassment. They are:

> 6(a) On divers dates the defendant union in and through its members threatened the plaintiffs with retaliation if they broke the "unwritten rule of not reporting on brother officers". The plaintiffs reported this harassment because of the "unwritten policy". Defendant [Director] countenanced the unwritten policy by stating that no information should leave the Institution and that it should all be kept internal.
>
> 6(c) On or about December 11, 1989, plaintiff Burke was handed an envelope containing the cartoon attached hereto and incorporated by reference therein. Plaintiff learned that defendant Dede and defendant Rivard with the union's blessing had distributed the aforesaid

cartoon throughout the area at the prison known as LSC. Defendant officials of the State of Rhode Island took no action to have the cartoons removed, but in fact allowed the cartoons to be posted in various public places for hours without directing that they be taken down.

6(d) On or about December 20, 1989, the plaintiffs were ordered by their superiors to do a shakedown in the prison area known as G–8. The policy of the institution is to have two officers shake down a cell together. Plaintiff Burke herein was placed in jeopardy by the union's failure to insist on the implementation of that policy; in fact, he was left alone in the cell with an inmate. The plaintiff informed the defendant union and its officers, and defendant [Director] and other defendants by their failure to act in effect created a custom and policy that any assistance to the plaintiffs would not be forthcoming, and they would be at risk themselves in the Institution.

6(e) On or about January 7, 1990, one of the plaintiffs was required to shakedown kitchen workers in order to ascertain whether any weapons, knives, etc., were being purloined for use as contraband weapons, and the defendant union members refused to implement procedures to protect the plaintiff Burke. The defendant administration countenanced said refusal by taking no disciplinary action against the officers who were supposed to assist plaintiff Burke.

6(f) On or about January 14, 1990, in an area known as the ISC community room, union members distributed obscene notes and/or drawings which were taped to lockers and telephones. Defendant Mardox, Rivard, Reedy, Boudreau and Detonnancourt actively encouraged the hanging of the graffiti and also attempted to provoke arguments with the plaintiffs. Plaintiffs reported these incidents to their union as well as to the defendant [Director] and no action was taken against any members.

6(g) On or about January 15, 1990, after roll call, plaintiffs received mousetraps with notes saying that that's what would happen to them as "rats". Since the mail was interdepartmental, it had to come from union members. Again, the plaintiffs reported same to the defendants herein with the exception of defendant [Governor], and no action was taken to investigate and/or take disciplinary action.

6(h) On or about January 15, 1990, plaintiffs were further harassed when the administration via defendant [Director] gave reports to the individual defendants herein and, in turn, plaintiffs were harassed by the individual defendants who in turn circulated reports to other members of the union. Defendant [Director] took no action regarding same.

6(i) In the fall of 1989 plaintiff Corrente was told by the union office not to go forward and press complaints and testify or else there would be retaliation. The plaintiff reported this to the administration via defendant [Director] and he took no action against the individual officers who made the threat. The plaintiffs pressed for action based on the retaliation, and defendant [Director] indicated there was nothing more he could do.

Although plaintiffs' complaint is no model of clarity, it does set out a minimal factual setting which alleges defendant Director knew of and acquiesced in the alleged harassment. The First Circuit has recognized that a supervisor may be liable for deliberate indifference to constitutional violations inflicted on others by those in his charge.[3] Supervisory liability under Section 1983 has three facets. First, liability may not be based on principles of respondeat superior. Rather, a " 'supervisor may be found liable only on the basis of her own acts or omissions.' " *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 562 (1st Cir. 1989) (quoting *Figueroa v. Aponte–Roque,*

3. Although supervisory liability cases usually involve defendants sued in their individual capacity, here the supervisory official has only been sued in his official capacity. The Court is unsure of plaintiffs' litigation strategy; however, it is clear that the characterization of the defendant does not affect the sufficiency of plaintiffs' claim.

864 F.2d 947, 953 (1st Cir.1989)). Second, a supervisor's indifference must "rise to the level of being deliberate, reckless or callous." *Id.* Finally, "there must be 'an "affirmative link" between the street-level misconduct and the action, or inaction of supervisory officials.'" *Id.* (citations omitted). *See Miranda v. Munoz,* 770 F.2d 255, 260–62 (1st Cir.1985) (reversing a grant of a motion for directed verdict entered in favor of four defendants who were supervisory officials of the Puerto Rico Correctional Administration in a case involving allegations that defendants exhibited a deliberate indifference to a pre-trial detainee's medical needs). *See also Fernandez v. Chardon,* 681 F.2d 42, 56–57 (1st Cir.1982) (affirming the denial of two supervisory defendants' motion for judgment notwithstanding the verdict because sufficient evidence existed from which the jury could have inferred participation or acquiescence in retaliation against the plaintiffs who had been politically discriminated against), *aff'd on other grounds,* 462 U.S. 650, 103 S.Ct. 2611, 77 L.Ed.2d 74 (1983).

Plaintiffs' allegations concerning the Director's actions and inactions satisfy *Dewey*'s particularity requirement and the three elements of supervisory liability set out in *Gutierrez-Rodriguez.* First, plaintiffs' allege that the Director not only knew of the harassment, but failed to act to cure incidents of harassment when he had an obligation to do so. For example, the Director may be held accountable for his own inactions following the two shakedown incidents alleged in paragraphs 6(d) and 6(e) of plaintiffs' complaint. Second, given the Director's knowledge of the plaintiffs' implication of fellow officers for assaulting an inmate, the alleged failure of the Director to act could be considered deliberate, reckless or callous. Finally, plaintiffs' allegations are sufficient to establish an affirmative link between the harassment and the instances of inaction by the Director.

Plaintiffs' complaint alleges with particularity minimum facts sufficient to withstand dismissal of the claim that defendant Director violated Section 1983. In short, the plaintiffs may be able to prove facts at trial pursuant to these allegations which will subject the Director to prospective injunctive sanctions.

2. Brotherhood Defendants

As a preliminary matter, the Brotherhood defendants contend that the Brotherhood itself is not properly before the Court because plaintiffs did not comply with the service provisions for unincorporated associations outlined in Rhode Island General Laws Section 9–2–12. Defendants also allege that Rhode Island law precludes an action against the individual Brotherhood members pending the outcome of the action against the Brotherhood and its officers. R.I.Gen.Laws § 9–2–15.

It is clear that an "unincorporated party is not a proper party in a law suit under the law of Rhode Island." *Walsh v. Israel Couture Post, No. 2274,* 542 A.2d 1094, 1095 n. 1 (1988). A plaintiff must sue either all the individual members of the association or comply with Rhode Island General Laws Sections 9–2–10 through 9–2–15, which authorize service on the officers of an unincorporated association. *Oskoian v. Canuel,* 269 F.2d 311 (1st Cir.1959).

Despite this well-settled law, all the Brotherhood defendants are properly before this Court. Rule 17(b) of the Federal Rules of Civil Procedure states:

> [C]apacity to sue or be sued [is] determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States.

Because this provision authorizes suit against the Brotherhood itself, Rhode Island law can not bar plaintiffs' suit against individual members.

All the Brotherhood defendants are "persons" within the meaning of Section 1983. The Court's focus here will be on whether plaintiffs have satisfactorily alleged that each Brotherhood defendant act-

ed under color of state law to deprive them of their civil rights.

One need not be an officer of the state to act "under color" of state law. *United States v. Price,* 383 U.S. 787, 793, 86 S.Ct. 1152, 1156, 16 L.Ed.2d 267 (1966). Conversely, a person who is an officer of the state does not necessarily act "under color" of law merely by acting. *See generally* S. Nahmod, *Civil Rights and Civil Liberties Litigation* § 2.08 (2d ed. 1986) (discussing the issue of when a state employee becomes a private citizen for state action purposes).

The question here is whether plaintiffs have alleged that the private Brotherhood defendants "acted together with or obtained significant aid from state officials" and whether this conduct is "chargeable to the State." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 936, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982). *See Kermit Constr. Corp. v. Banco Credito Y Ahorro Ponceno,* 547 F.2d 1, 3 (1st Cir.1976). Construing the facts in the light most favorable to the plaintiffs, the complaint alleges that the Brotherhood defendants were acting under color of state law.

In order to withstand a motion to dismiss, plaintiffs next must have alleged with particularity that the Brotherhood defendants deprived them of rights, privileges, or immunities secured by the Constitution or laws of the United States.

Plaintiffs' complaint alleges that the Brotherhood itself is liable for any harassment or threats orchestrated by Brotherhood members. In addition, the complaint contains seven paragraphs which attempt to directly implicate the Brotherhood.

> 6(a) On divers dates the defendant union in and through its members threatened the plaintiffs with retaliation if they broke the "unwritten rule of not reporting on brother officers". The plaintiffs reported this harassment because of the "unwritten policy". Defendant [Director] countenanced the unwritten policy by stating that no information should leave the Institution and that it should all be kept internal.
>
> 6(c) On or about December 11, 1989, plaintiff Burke was handed an envelope containing the cartoon attached hereto and incorporated by reference therein. Plaintiff learned that defendant Dede and defendant Rivard with the union's blessing had distributed the aforesaid cartoon throughout the area at the prison known as LSC. Defendant officials of the State of Rhode Island took no action to have the cartoons removed, but in fact allowed the cartoons to be posted in various public places for hours without directing that they be taken down.
>
> 6(d) On or about December 20, 1989, the plaintiffs were ordered by their superiors to do a shakedown in the prison area known as G–8. The policy of the institution is to have two officers shake down a cell together. Plaintiff Burke herein was placed in jeopardy by the union's failure to insist on the implementation of that policy; in fact, he was left alone in the cell with an inmate. The plaintiff informed the defendant union and its officers, and defendant [Director] and other defendants by their failure to act in effect created a custom and policy that any assistance to the plaintiffs would not be forthcoming, and they would be at risk themselves in the Institution.
>
> 6(f) On or about January 14, 1990, in an area known as the ISC community room, union members distributed obscene notes and/or drawings which were taped to lockers and telephones. Defendant Mardox, Rivard, Reedy, Boudreau and Detonnancourt actively encouraged the hanging of the graffiti and also attempted to provoke arguments with the plaintiffs. Plaintiffs reported these incidents to their union as well as to the defendant [Director] and no action was taken against any members.
>
> 6(i) In the fall of 1989 plaintiff Corrente was told by the union office not to go forward and press complaints and testify or else there would be retaliation. The plaintiff reported this to the administration via defendant [Director] and he took no action against the individual officers who made the threat. The plaintiffs

> pressed for action based on the retaliation, and defendant [Director] indicated there was nothing more he could do.
>
> 6(j) Defendant Mardox prior to the hearing at which the plaintiffs were to testify told the plaintiffs that the union would throw them out if they did so. Defendant Rivard also told the plaintiffs that you deserve any harassment that you get. Rivard also brought forward a correctional officer to make false statements against the plaintiffs. When this information was reported, no action was taken by the administration.
>
> 6(m) On or about July 19, 1990, plaintiffs having returned back to work were told by the individual defendants that the union did not want them in the building.

These paragraphs do set out minimal facts sufficient to sustain a Section 1983 claim against the Brotherhood. The complaint succeeds in setting out what the Brotherhood through its officers, agents and employees allegedly did to the plaintiffs and why. Plaintiffs' factual setting avers that the Brotherhood not only knew of the alleged harassment, but actively promoted it by several methods.

Furthermore, four paragraphs of the plaintiffs complaint allege a minimal factual setting sufficient to state a claim against six individual Brotherhood members. Defendants Mardox, Dede, Rivard, Reedy, Boudreau, and Detonnancourt are implicated by the following allegations:

> 6(b) On or about November 30, 1989, plaintiff Burke entered the office of Captain Dede, defendant herein, to turn in a metal pipe found during the course of plaintiff Burke's duty, and Dede stated, (words to the effect) "Burke, I hope you have a good lawyer. You might be getting a ride up the hill in the big car." Plaintiffs aver that said language in prison lingo constitutes a threat.
>
> 6(c) On or about December 11, 1989, plaintiff Burke was handed an envelope containing the cartoon attached hereto and incorporated by reference therein. Plaintiff learned that defendant Dede and defendant Rivard with the union's blessing had distributed the aforesaid cartoon throughout the area at the prison known as LSC. Defendant officials of the State of Rhode Island took no action to have the cartoons removed, but in fact allowed the cartoons to be posted in various public places for hours without directing that they be taken down.
>
> 6(f) On or about January 14, 1990, in an area known as the ISC community room, union members distributed obscene notes and/or drawings which were taped to lockers and telephones. Defendant Mardox, Rivard, Reedy, Boudreau and Detonnancourt actively encouraged the hanging of the graffiti and also attempted to provoke arguments with the plaintiffs. Plaintiffs reported these incidents to their union as well as to the defendant [Director] and no action was taken against any members.
>
> 6(j) Defendant Mardox prior to the hearing at which the plaintiffs were to testify told the plaintiffs that the union would throw them out if they did so. Defendant Rivard also told the plaintiffs that you deserve any harassment that you get. Rivard also brought forward a correctional officer to make false statements against the plaintiffs. When this information was reported, no action was taken by the administration.

These paragraphs provide a sufficient factual basis for the Section 1983 claim. The facts upon which plaintiffs base their action are clear, and that is all *Dewey* requires. Because plaintiffs' complaint states a cause of action against these six defendants, their motions to dismiss must be denied.

Plaintiffs' complaint does not make a single allegation against defendant Sabalewski, defendant Silverman, defendant Doe, defendant Bovi, nor defendant Costa. Needless to say, *Dewey*'s particularity requirement imposes the burden on plaintiffs to at least set out what these defendants allegedly did. In short, plaintiff has ignored a critical aspect of *Dewey*'s admonition that the complaint set out who did what to whom and why. The "what" is completely absent from plaintiff's complaint. The motions to dismiss for failure

to state a claim under Section 1983 are therefore granted with respect to these defendants.

B. *The Section 1985 Claim*

Section 1985 has three subsections which proscribe five types of conspiracies. Plaintiffs fail to specify which provision of Section 1985 defendants have allegedly violated. However, it is clear that plaintiffs' allegations are insufficient to make out a claim under any of the five classes of prohibited conspiracies.

The second part of Section 1985(2) [4] and the first portion of Section 1985(3) [5] both relate to conspiratorial activity that is primarily of state concern. Both require that "the conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws." *Kush v. Rutledge,* 460 U.S. 719, 725, 103 S.Ct. 1483, 1487, 75 L.Ed.2d 413 (1983). Plaintiffs' complaint does not contain any allegations that defendants had any such intent here.

In addition, with respect to the first part of Section 1985(3), the Supreme Court has required an allegation that the conspiracy be motivated by a "racial, or otherwise class-based, invidiously discriminatory animus." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). This requirement has been extended by the Circuit Courts of Appeals to apply to the second part of Section 1985(2). *See e.g. Harrison v. Springdale Water & Sewer Comm'n,* 780 F.2d 1422, 1429 (8th Cir.1986) (collecting cases). No such allegation is contained in plaintiffs' complaint.

The three other brands of Section 1985 conspiracy "relate to institutions and processes of the Federal Government—federal officers, § 1985(1); federal judicial proceedings, the first portion of § 1985(2); and federal elections, the second part of § 1985(3)." *Kush,* 460 U.S. at 724, 103 S.Ct. at 1487. Quite obviously, plaintiffs' allegations do not invoke Section 1985(1) [6] nor the second part of Section 1985(3).[7] Plaintiffs' complaint also fails to make out a claim under the first part of Section 1985(2), which prohibits conspiracies to injure a person or his property on account of testifying or attending a proceeding in the United States courts.[8] Plaintiffs have al-

**4.** The second part of Section 1985(2) states:

> [O]r if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws ...

**5.** The first portion of Section 1985(3) states:

> If two or more persons in any State or Territory conspire to go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws ...

**6.** Section 1985(1) provides:

> If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties ...

**7.** The second portion of Section 1985(3) states:

> [I]f two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy ...

**8.** The complete text of the first part of Section 1985(2) provides:

> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending

leged several incidents of harassment by Brotherhood members and the Brotherhood itself prior to a "hearing" in an unidentified forum as well as during "interdisciplinary proceedings." The first part of Section 1985(2) is limited to conspiracies interfering with justice in "any court of the United States." Plaintiffs simply have not alleged that defendants conspired to injure plaintiffs on account of their attendance or testimony in a United States court. Because plaintiffs' allegations are insufficient to make out a claim under any of the five types of conspiracies prohibited by Section 1985, every defendant's motion to dismiss that claim must be granted.

## CONCLUSION

Plaintiffs' complaint fails to state a claim under Section 1983 against the following defendants: the Governor, Sabalewski, Doe, Silverman, Bovi, and Costa. Therefore, the 12(b)(6) motion to dismiss of those defendants is granted. Plaintiffs complaint does state a cause of action under Section 1983 against all other defendants: the Director, the Brotherhood, Mardox, Dede, Rivard, Reedy, Boudreau, and Detonnancourt. Therefore, the 12(b)(6) motion to dismiss of those defendants is denied. Plaintiffs complaint fails to state a claim under Section 1985 against any defendant; thus every defendant's 12(b)(6) motion to dismiss that claim is granted.

*It is so Ordered.*

therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror ...