**In re URETHANE ANTITRUST LITIGATION,**

**This Document Relates to the Direct Action Polyether Polyol Cases:**

**Carpenter Co., et al.**

v.

**BASF SE, et al.,**

and

**Woodbridge Foam Corporation, et al.**

v.

**BASF SE, et al.**

Case Nos. 04–1616–JWL, 08–2617–JWL, 09–2026–JWL.
MDL No. 1616.

United States District Court,
D. Kansas.

Aug. 14, 2009.

George A. Hanson, Norman E. Siegel, Stueve Siegel Hanson LLP, W. Joseph Hatley, Spencer Fane Britt & Browne LLP, Kansas City, MO, Rex A. Sharp, Gunderson Sharp & Walke, LLP, Prairie Village, KS, Roy Morrow Bell, Troutman Sanders LLP, San Diego, CA, Steven A. Kanner, Freed Kanner London & Millen, LLC, Bannockburn, IL, Susan G. Kupfer, Glancy Binkow & Goldberg LLP, San Francisco, CA, W. Joseph Bruckner, Yvonne M. Flaherty, Lockridge Grindal Nauen, PLLP, Minneapolis, MN, for Urethane Antitrust Litigation.

Christopher T. Leonardo, R. Bruce Holcomb, Adams Holcomb, LLP, Elaine Metlin, Jodi Trulove, Richard J. Leveridge, Dickstein Shapiro, LLP, Washington, DC, Mauro M. Wolfe, Dickstein Shapiro Morin & Oshinsky LLP, New York, NY, for Carpenter Co./Woodbridge Foam Corporation.

Brian R. Markley, Stinson Morrison Hecker LLP, David F. Oliver, Berkowitz Oliver Williams Shaw & Eisenbrandt, LLP, Kansas City, MO, for BASF SE.

### MEMORANDUM AND ORDER

JOHN W. LUNGSTRUM, District Judge.

This order relates to two direct actions by plaintiffs who have opted out of the class certified in the main action in this multi-district litigation, as noted in the caption above. This order specifically relates to various defendants' motion to dismiss some of the direct action plaintiffs' claims pursuant to Fed.R.Civ.P. 12(b)(6) (Doc. # 913). This order also resolves the additional motions to dismiss filed by defendant BASF Coordination Center Comm. V ("BCC") (Doc. # 1017) and by individual defendants Jean–Pierre Dhanis and Uwe Hartwig (Doc. # 1019) to the extent that those defendants have merely joined in the arguments by the original movants. The Court grants the motions to dismiss in part and denies them in part. As more fully set forth below, the Court (a) dismisses the direct action plaintiffs' antitrust conspiracy claims (under federal,

state, or European law) based on the period from 1994 to 1998, on the basis that plaintiffs have not alleged sufficient facts to support antitrust liability during that period; (b) dismisses any claims under Indiana or Tennessee law based on the period after 1998 as time-barred; (c) dismisses any claims under Wisconsin law on the basis that those plaintiffs have not alleged sufficient facts to show conduct substantially affecting the State of Wisconsin, as required under that state's antitrust law; and (d) dismisses any claims brought by plaintiffs on behalf of parent corporations or other affiliates that are not specifically named as parties. The motions to dismiss are denied in all other respects. The direct action plaintiffs are granted leave to amend their complaints on or before **September 8, 2009,** to cure certain pleading deficiencies, as set forth herein. Finally, plaintiffs' motion for oral argument (Doc. # 996) is denied to the extent that it relates to the issues addressed herein.[1]

## I. *Statement of a Claim for Antitrust Liability*

This multidistrict litigation includes class actions in which the plaintiffs claim that defendants engaged in unlawful price-fixing conspiracies with respect to urethane chemical products, in violation of the Sherman Act, 15 U.S.C. § 1. The Court has consolidated two sets of cases relating to different types of urethane products: the Polyester Polyol cases, which have settled; and the Polyether Polyol cases, to which this Order relates.

In the Polyether Polyol class actions, the plaintiffs have alleged a price-fixing conspiracy beginning in 1999, and in July 2008, the Court certified a class of plaintiffs who purchased these products in the United States from defendants at any time from January 1, 1999, to December 31, 2004. In the class actions, the Court ruled on various arguments by defendants for dismissal of plaintiffs' claims in two separate orders: *In re Urethane Antitrust Litigation,* 409 F.Supp.2d 1275 (D.Kan.2006) (*Urethane I*); and *In re Urethane Antitrust Litigation,* 235 F.R.D. 507 (D.Kan. 2006) (*Urethane II*). The basic antitrust allegations by the class against defendants are set forth in those previous opinions.

In the present actions (*Carpenter* and *Woodbridge*), two sets of plaintiffs, comprising a total of 56 potential class members who have opted out of the class action, have filed their own direct actions against defendants. These direct actions go beyond the scope of the class action in a few ways. First, the direct action plaintiffs allege a conspiracy beginning in 1994. Second, a total of nine plaintiffs allege antitrust violations not only under federal law, but also under the laws of one or more states (Indiana, Tennessee, or Wisconsin). Third, a number of European plaintiffs bring antitrust claims under a European Union treaty and other "applicable E.U. Member States' laws," instead of bringing claims under the Sherman Act or state law. Fourth, three additional defendants, including the two individuals, have been added as parties.

In the first part of the present motions to dismiss, defendants contend that plaintiffs have failed to state a claim for liability under federal, state, or European law for a price-fixing conspiracy existing prior to 2002, or in the alternative, prior to 1999;

---

**1.** This order does not address defendants' motion to dismiss plaintiffs' European Union claims (Doc. # 915); the motions to dismiss by defendant BCC and the individual defendants (Doc. ## 1017, 1019) to the extent based on the other defendants' motion regarding the European Union claims; the individual defendants' additional bases for dismissal (Doc. # 1019), to which plaintiffs have not yet responded; or plaintiffs' motion for oral argument on those issues (Doc. # 996). Those motions remain pending.

or under European law for a conspiracy existing at any time involving European prices for the products at issue. Specifically, defendants argue that plaintiffs have failed to allege sufficient facts to support such conspiracy allegations under the pleading standards announced by the United States Supreme Court in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

### A. Twombly *Pleading Standards*

In *Twombly*, a class action, the Supreme Court held that the complaint at issue, which alleged liability under Section 1 of the Sherman Act, could not survive a motion to dismiss when it alleged parallel conduct by the defendants that was unfavorable to competition without alleging additional facts suggesting an agreement as opposed to independent action. *See id.* at 548, 127 S.Ct. 1955. In reaching that decision, the Supreme Court set forth the governing standards for reviewing the sufficiency of a complaint under Fed.R.Civ.P. 8(a). Because the Supreme Court's descriptions of these standards are particularly useful, they are set out here at some length.

In *Twombly*, the Supreme Court began as follows:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

*Id.* at 555, 127 S.Ct. 1955 (quoting Fed. R.Civ.P. 8(a)(2)) (other citations omitted). The Court further expounded on the proper pleading standards in applying those standards in the antitrust context:

> In applying these general standards to a § 1 claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement....
>
> The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the "plain statement" possess enough heft to "sho[w] that the pleader is entitled to relief." ... An allegation of parallel conduct is thus much like a naked assertion of conspiracy in a § 1 complaint; it gets the complaint close to stating a claim, but without some further enhancement it stops short of the line between possibility and plausibility of "entitle[ment] to relief."

*Id.* at 556–57, 127 S.Ct. 1955 (citations and footnotes omitted). The Court stated that, while the border between deficient and acceptable pleading in a prior case had been "the line between the conclusory and the factual," in this context the border "lies between the factually neutral and the factually suggestive," and that "[e]ach [border] must be crossed to enter the realm of plausible liability." *See id.* at 557 n. 5, 127 S.Ct. 1955.

The Court noted its prior statement from *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *see id.* at 561, 127 S.Ct. 1955 (quoting *Conley*, 355 U.S. at 46–

47, 78 S.Ct. 99), but the Court rejected that statement as a proper pleading standard to the extent that it suggests that "any statement revealing the theory of the claim will suffice unless its factual impossibility may be shown from the face of the pleadings," *see id.* at 561–62, 127 S.Ct. 1955. The Court continued:

> The phrase [from *Conley* ] is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Conley,* then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival.

*Id.* at 563, 127 S.Ct. 1955 (citations omitted).

Looking for "plausibility" under these standards, the Court concluded that the complaint in the case before it "[came] up short," based on the absence of alleged facts tending to show that the defendants' parallel conduct resulted from a conspiracy, and did not merely constitute independent action. *See id.* at 564–70, 127 S.Ct. 1955.[2] The Court noted in a footnote that, had plaintiff's claim not rested on allegations of parallel conduct, the complaint's references to an agreement between the defendants would not have been sufficient, as the complaint merely alleged a time period for the violations, but did not mention any specific time, place, or person involved in the alleged conspiracies. *See id.* at 565 n. 10, 127 S.Ct. 1955. Finally, in distinguishing its prior holding in an employment case, the Court concluded as followed:

> Here, in contrast, we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.

*See id.* at 570, 127 S.Ct. 1955.

The Supreme Court recently reaffirmed these pleading standards in *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949–54, 173 L.Ed.2d 868 (2009), which involved a *Bivens* claim. The Court summarized *Twombly* 's two-pronged approach as follows:

> [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a

---

**2.** With respect specifically to antitrust claims, the Court, in reviewing the practical significance of this "entitlement" requirement of Rule 8, stated that "it is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive." *See id.* at 558, 127 S.Ct. 1955 (citation omitted).

defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical code-pleading regime of a prior era, but it does not unlock the doors of discovery for plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 1949–50 (citations omitted) (quoting *Twombly*, 550 U.S. at 555–57, 570, 127 S.Ct. 1955). The Court then summarized its application of these standards to the complaint at issue in *Twombly:*

The Court held the plaintiff's complaint deficient under Rule 8. In doing so it first noted that the plaintiff's assertion of an unlawful agreement was a "legal conclusion" and, as such, was not entitled to the assumption of truth. Had the Court simply credited the allegation of a conspiracy, the plaintiff would have stated a claim for relief and been entitled to proceed perforce. The Court next addressed the "nub" of the plaintiffs' complaint—the well-pleaded, nonconclusory factual allegation of parallel behavior—to determine whether it gave rise to a "plausible suggestion of conspiracy." Acknowledging that parallel conduct was consistent with an unlawful agreement, the Court nevertheless concluded that it did not plausibly suggest an illicit accord because it was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed free-market behavior. Because the well-pleaded fact of parallel conduct, accepted as true, did not plausibly suggest an unlawful agreement, the Court held the plaintiffs' complaint must be dismissed.

*Id.* at 1950 (citations omitted) (citing *Twombly*, 550 U.S. at 555, 565–67, 570, 127 S.Ct. 1955).

In *Iqbal*, the Court then rejected the arguments that the *Twombly* standards should be limited to antitrust cases and that the standards might be relaxed in the face of controls placed upon the initial discovery process. *See id.* at 1953. The Court also rejected the argument that Rule 9(b), which states that fraud must be pleaded with particularity but that intent and other mental conditions may be alleged generally, permitted a conclusory allegation of intent. *See id.* at 1954. The

Court concluded that "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context," and that "Rule 8 does not empower [the plaintiff] to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Id.*

Shortly after *Twombly*, the Tenth Circuit described that opinion as one that "seeks to find a middle ground between 'heightened fact pleading,' which is expressly rejected, and allowing complaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' which the [Supreme] Court stated 'will not do.'" *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir.2008) (citations omitted) (quoting *Twombly,* 550 U.S. at 555, 570, 127 S.Ct. 1955). The Tenth Circuit also clarified the meaning of "plausible" under the *Twombly* standard:

> Thus, "plausible" cannot mean "likely to be true." Rather, "plausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

*Id.* (citations omitted) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). The Tenth Circuit noted that "[t]his requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248. Finally, the court in *Robbins* agreed that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context," on the type of case. *See id.*

The Tenth Circuit has also stated that under the *Twombly* standards, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *See Bryson v. Gonzales,* 534 F.3d 1282, 1286 (10th Cir.2008) (internal quotation omitted). The court has noted further that this pleading requirement not only serves the purpose of giving the defendant notice of the actual grounds of the claim, but can also avoid costly discovery on the basis of a largely groundless claim. *See id.* at 1287.

Specifically in the context of a conspiracy claim, the Tenth Circuit has ruled that merely conclusory allegations that a conspiracy exists is not sufficient to state a claim under *Twombly. See Native Am. Distrib. v. Seneca–Cayuga Tobacco Co.,* 546 F.3d 1288, 1298 (10th Cir.2008) (citing *Twombly,* 550 U.S. 544, 127 S.Ct. 1955).

Thus, the United States Supreme Court has made clear the Court's task in the present case: The Court need not assume as true conclusory statements in plaintiffs' complaints, including the mere recitation of the existence of a conspiracy or other elements of the claims. Rather, the Court must ensure that plaintiffs have alleged facts to support those elements sufficient to provide the "heft" to show an entitlement to relief and to "nudge" plaintiffs' claims over the line from merely possibility or speculation to plausibility. In an antitrust case such as this one, sufficient facts would tend to include details concerning the conspirators' actual agreement to fix prices.

In light of these standards, the Court addresses defendants' specific arguments

concerning the sufficiency of plaintiffs' allegations of a price-fixing conspiracy among defendants.

### B. Allegations of a Conspiracy Prior to 2002

As a part of its antitrust claims, plaintiffs must allege and prove the existence of an agreement or conspiracy among competitors. *See, e.g., Cayman Exploration Corp. v. United Gas Pipe Line Co.,* 873 F.2d 1357, 1361 (10th Cir.1989) (listing elements for claim of horizontal price-fixing). Defendants seek dismissal of plaintiffs' antitrust claims (under federal, state, or European law [3]) as they relate to the fixing of prices prior to 2002, arguing that plaintiffs have not alleged sufficient facts regarding the existence of a conspiracy during that time period.

■ The Court has no trouble finding plaintiffs' allegations regarding the existence of a conspiracy sufficient, at least for the period beginning in 1999. In *Urethane I,* this Court rejected defendants' argument that the class complaint's allegations in support of the antitrust claims were deficient. *See Urethane I,* 409 F.Supp.2d at 1281–83. In concluding that the allegations sufficiently gave defendants fair notice of the basis for plaintiffs' claims, the Court identified a number of nonconclusory facts alleged in the class complaint relating to the existence of a conspiracy, including the facts that defendants agreed to fix prices for the products at issue; that the characteristics of the markets for these products facilitated anticompetitive collusion; that interrelated price increases and announcements for these products were made by defendants; and that defendants accomplished this by participating in meetings and conversations in which they agreed to set prices and allocate customers. *See id.* at 1281–82, 1283. Although the Court's opinion preceded *Twombly,* defendants have not suggested that the motion to dismiss in the class action was wrongly decided in light of the Supreme Court case. The direct plaintiffs' complaints at issue here go beyond the class complaint by giving details (dates, parties involved, locations) about a number of meetings and communications between and among defendants, as well as details about various announcements by defendants and industry publications that relate to contemporaneous price increases.[4]

Defendants appear to find no fault with the sufficiency of plaintiffs allegations as they relate to the existence of a conspiracy regarding United States prices beginning in 2002. With respect to the period prior to 2002, defendants focus on plaintiffs' allegations relating to specific meetings and communications involving defendants beginning in the "late 1990s or early 2000s." Among those allegations, plaintiffs have alleged that on or about January 21, 2002, representatives of two companies met in Michigan, discussed the United States market, and "agreed on price increases." Defendants note, however, that the allegations relating each meeting or communication occurring from 1999 to 2001 do not include the specific allegation that a particular agreement was reached at that time; thus, defendants argue that plaintiffs have pleaded sufficient facts to support the existence of a conspiracy only beginning in 2002.

The Court rejects defendants' attempt to impose such a strict pleading standard

---

**3.** The Court assumes that it has subject matter jurisdiction over the European law claims only for the purposes of these motions, pending resolution of defendants' other motions to dismiss those claims.

**4.** The two separate direct action complaints at issue here contain the same substantive allegations regarding defendants' liability, differing only with respect to the particular plaintiffs involved in each suit.

in this case. *Twombly* does not require that plaintiffs prove their case or include every factual detail in support of their claims in their complaints. Rather, they must include sufficient facts supporting the existence of a conspiracy, beyond the conclusory allegation that a conspiracy did exist. For the period beginning in 1999, plaintiffs have alleged a number of specific meetings and communications between and among defendants relating to prices and markets for these products, occurring in a market that facilitated collusion and saw contemporaneous price increases, as well as specific measures taken by the participants to keep those meetings and communications secret (for instance, sweeps for surveillance devices and the use of pay phones away from offices). Such specific, nonconclusory factual allegations satisfy the plausibility standard and (taken as true) are sufficient to create the inference that a conspiracy existed beginning in 1999. The Court rejects this argument for dismissal.

### C. Allegations of a Conspiracy to Fix European Prices

■ Defendants make a similar argument relating to the existence of a conspiracy to fix European prices for the products during any time period, based on the absence of a specific allegation of an agreement reached during a meeting or communication relating to European or global pricing. The Court rejects this argument as well. In support of their claims under European law, the plaintiffs who purchased products in Europe have alleged that the participants discussed European or global pricing as well as United States pricing at a number of the specific meetings and communications identified in the complaints, including the first specific meeting alleged, which occurred in the "late 1990s or early 2000s." Such allegations sufficiently raise the inference that any conspiracy involved the fixing of both United States and European prices. The

other allegations listed above, *see supra* Part I.B, sufficiently raise the inference that conspiracy existed, at least beginning in 1999. Accordingly, plaintiffs have sufficiently alleged a conspiracy to fix European prices beginning in 1999.

### D. Allegations of a Conspiracy Prior to 1999

■ The Court does agree with defendants, however, that plaintiffs have failed to state a cause of action for antitrust liability under the *Twombly* standard for the period prior to 1999. Plaintiffs have not alleged any specific meeting or communication involving defendants occurring prior to 1999. Plaintiffs have alleged generally that such meetings and communications began in 1994; without any supporting factual allegations, however, such a general allegation is no better than a conclusory allegation that defendants conspired beginning in 1994, and *Twombly* teaches that such an allegation does not suffice. In support of their claims of conspiracy, plaintiffs have also identified two 1994 articles and two 1998 letters relating to price increases in the market. The mere fact of such increases, however, does not raise the plausible inference that they resulted from an illegal conspiracy beginning in 1994 and not from independent conduct or legitimate circumstances; thus, as in *Twombly,* those allegations do not plausibly support the existence of a conspiracy during the time period at issue.

A review of plaintiffs' complaints fails to reveal any specifically alleged factual basis for plaintiffs' decision to use 1994 as the starting point of the conspiracy. (Nor have plaintiffs stated in their opposition brief why they chose that date.) There are certainly no allegations of specific meetings or communications occurring during that period, as there are for the period beginning in 1999; as the Supreme

Court noted, allegations of an agreement would normally include details about the formation of that agreement. *See Twombly*, 550 U.S. at 565 n. 10, 127 S.Ct. 1955; *see also, e.g., Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047–48 (9th Cir.2008) (complaint that only conclusorily alleged participation in a conspiracy failed to state a claim under *Twombly*; complaint did not answer the basis questions of "who, did what, to whom (or with whom), where, and when"); *Robbins*, 519 F.3d at 1248 (facts needed to satisfy plausibility standard depends on the type of case). Thus, there are no allegations in these complaints that would give defendants fair notice of the basis for plaintiffs' claim of a conspiracy beginning in 1994.[5]

Plaintiffs insist that they need not allege specific meetings or communications occurring during each year during the alleged conspiracy. That argument misses the point, however. Under *Twombly*, plaintiffs cannot simply allege a conspiracy beginning at a particular time; rather, they must allege facts to support the existence of a conspiracy during the entire period. Plaintiffs may not need to allege meetings occurring at any particular intervals; they must at least provide a factual basis for their starting date, however, in order to show an entitlement to relief beginning on that date. Plaintiffs have not done so

here; accordingly, plaintiffs have not stated a claim for antitrust liability (under either the federal or state statutes or European law) for the period from 1994 to 1998, and therefore such claims are subject to dismissal.[6]

It is not clear that plaintiffs could not provide the necessary factual basis for a period of liability beginning in 1994. Accordingly, plaintiffs are granted leave to file, on or before **September 8, 2009**, amended complaints that include sufficient allegations under the *Twombly* standard to support liability from 1994 to 1998. In the absence of such amendments, plaintiffs' claims for this period shall be dismissed with prejudice. *See, e.g., Urethane I*, 409 F.Supp.2d at 1285 (granting class plaintiffs leave to amend to cure pleading deficiencies).

## II. *Allegations of Fraudulent Concealment Before 1999*

In their complaints, plaintiffs allege that their claims are timely under the applicable statutes of limitation because of defendants' affirmative acts of fraudulent concealment of their price-fixing conspiracy. Defendants seek dismissal of plaintiffs' pre–1999 claims as time-barred on the basis that plaintiffs have not pleaded those affirmative acts of fraudulent concealment

---

**5.** This division of years is not simply a creation of defendants in arguing the motions to dismiss. In their complaints, in claiming fraudulent concealment, plaintiffs allege that they could not have known about their 1999–2004 claims until November 2004; and that they could not have known about their 1994–1998 claims until December 2007, when they learned from a cooperating conspirator, with whom they have settled their claims, that the conspiracy extended back to 1994. Plaintiffs did not include the latter allegation, however, as a basis to support their conspiracy allegations in the complaint; nor did plaintiffs include any facts learned from that conspirator that could support that the existence of a conspiracy prior to 1999.

**6.** Plaintiffs cite *In re TFT–LCD (Flat Panel) Antitrust Litigation*, 599 F.Supp.2d 1179, 1185 (N.D.Cal.2009), in which the court rejected the defendants' argument that the plaintiffs had not alleged facts to support a plausible inference of anticompetitive conduct before a particular date within the alleged conspiracy. That case is clearly distinguishable. In *TFT*, the court found that the complaints did include specific allegations about the early time period. *See id.* No such specific allegations are present in this case. The parties have not pointed the court to any other case in which the defendant attempted to carve out a portion of the alleged conspiracy period in this manner.

with sufficient particularity under Fed. R.Civ.P. 9(b). Although the Court has already found those claims to be subject to dismissal, it will address this argument in light of plaintiffs' opportunity to file amended complaints.

■ To toll the statute of limitations based on fraudulent concealment, plaintiffs must show defendants' use of fraudulent means, successful concealment from plaintiffs, and the fact that plaintiffs did not know or could not have known by due diligence of their cause of action. *See Ballen v. Prudential Bache Sec.*, 23 F.3d 335, 337 (10th Cir.1994). Defendants' fraudulent means must be pleaded with particularity under Rule 9(b). *See id.* Thus, plaintiffs' complaints must "set forth the time, place and contents of the false representations, the identity of the party making the false statements and the consequences thereof." *See Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir.2000) (quotation omitted).

■ Defendants made this same argument with respect to the class complaint. Class plaintiffs had alleged that defendants met secretly, agreed not reveal their acts in furtherance of the conspiracy, and gave false and pretextual reasons for prices, but plaintiffs had not alleged any details relating to those meetings and representations; accordingly, the Court granted defendants' motion to dismiss pursuant to Rule 9(b), subject to plaintiffs' ability to cure that deficiency in an amended pleading. *See Urethane I*, 409 F.Supp.2d at 1285. In their amended complaint, class plaintiffs did provide adequate details regarding the allegedly false and pretextual reasons for price increases, but they still failed to provide any details regarding alleged secret meetings or agreements to conceal their activities; therefore, the Court denied defendants' renewed motion to dismiss, but limited plaintiffs' fraudulent concealment theory to the allegations of false and pre-

textual reasons for price increases that had been pleaded with particularity. *See Urethane II*, 235 F.R.D. at 517–18.

In their complaints, the direct action plaintiffs allege the following affirmative fraudulent acts by defendants: secret meetings and communications, including agreements to conceal their price-fixing activities; false and pretextual letters and announcements regarding price increases; and defendants' denial of a price-fixing conspiracy throughout the class litigation.

As defendants point out, plaintiffs have not alleged with particularity any secret meeting or agreement to conceal occurring prior to 1999. Plaintiffs argue that their complaints, taken as a whole, contain particularized allegations to support tolling back to 1994. It is true that plaintiffs' pre–1994 claims may be supported by affirmative acts other than the alleged secret meetings and agreements to conceal, but plaintiffs' theory of fraudulent concealment is limited to those acts pleaded with particularity. Plaintiffs have not alleged the date or details of any such meetings or agreements occurring prior to 1994; therefore, plaintiffs cannot rely on any meetings or agreements occurring prior to 1999 to support tolling back to 1994. *See Urethane II*, 235 F.R.D. at 517–18.

Plaintiffs have alleged two 1994 announcements and two 1998 letters as false and pretextual statements that constitute affirmative fraudulent acts to support tolling of the statutes of limitations. Defendants attempt to argue that such allegations are too vague. Plaintiffs have alleged the dates, contents, and authors of those statements, however, and the Court therefore concludes that such acts have been pleaded with the requisite particularity. In turn, those allegations may support, at this pleading stage, the necessary tolling for claims from 1994 to 1998 (assuming that plaintiffs amend to plead

sufficient facts to support the existence of a conspiracy during that period). In the absence of additional allegations, however, plaintiffs will be limited to those four allegedly false and pretextual statements as affirmative acts to support their theory of fraudulent concealment.

Finally, plaintiffs have not disputed that a denial of wrongdoing in litigation cannot constitute fraudulent concealment. *See King & King Enters. v. Champlin Petroleum Co.*, 657 F.2d 1147, 1155 (10th Cir. 1981) (adopting this statement of the law by the district court); *In re Aluminum Phosphide Antitrust Litig.*, 905 F.Supp. 1457, 1470 (D.Kan.1995) (fact that defendants did not confess price-fixing conspiracy to Department of Justice did not constitute fraudulent act of concealment). Therefore, plaintiffs may not rely on defendants' denial in this case.

Accordingly, plaintiffs have pleaded some acts of fraudulent concealment going back to 1994 with sufficient particularity under Rule 9(b), and defendants' motion to dismiss plaintiffs' pre–1999 claims as time-barred is therefore denied. Under the present pleading, plaintiffs would be limited to those acts pleaded with particularity

in pursuing this theory. In light of plaintiffs' opportunity to amend to allege properly a conspiracy existing from 1994 to 1998, however, the Court grants plaintiffs leave also to amend their fraudulent concealment allegations to plead additional affirmative acts of concealment prior to 1998 with particularity.[7]

### III. *State Law Claims*

#### A. *Indiana and Tennessee Law— Statutes of Limitation*

A total of nine plaintiffs in these two cases have asserted claims under one or more state antitrust statutes enacted in Indiana, Tennessee, and Wisconsin.[8] Defendants move to dismiss the Indiana and Tennessee claims as time-barred, arguing that the direct action suits were filed more than three years after the class action suit that would have given plaintiffs notice of the existence of any cause of action under these statutes. Plaintiffs do not dispute that limitations periods of two and three years govern their claims under Indiana and Tennessee law, respectively. *See Gibson v. Miami Valley Milk Producers, Inc.*, 157 Ind.App. 218, 299 N.E.2d 631, 637 (1973) (two-year limitations period under

---

**7.** Plaintiffs have also alleged that defendants' conspiracy was self-concealing, and they suggest in a footnote in their opposition brief, without argument, that the Tenth Circuit would adopt a self-concealing standard and permit such an allegation to support tolling of the limitations period. In *King & King*, the Tenth Circuit noted that the Temporary Emergency Court of Appeals had stated in a prior case that to toll the statute of limitations a plaintiff would have to prove either fraudulent concealment or that "the defendant's conduct by reason of its fraudulent nature was inherently self-concealing." *King & King*, 657 F.2d at 1154 (quoting *Ashland Oil Co. v. Union Oil Co.*, 567 F.2d 984, 988 (Temp.Emerg.Ct.App.1977)). The Tenth Circuit did not pass on the propriety of that standard in *King & King*, however, nor has the Tenth Circuit subsequently adopted the self-concealing standard. Because the Court

has not dismissed plaintiffs' tolling claim as it relates to the period from 1994 to 1998, and in the absence of Tenth Circuit authority or argument by plaintiffs on this point, the Court declines to adopt the lesser self-concealing standard at this stage. *See Urethane II*, 235 F.R.D. at 518 (declining to decide whether the Tenth Circuit would adopt the self-concealing standard where plaintiffs' allegations satisfied the intermediate "affirmative acts" standard).

**8.** Plaintiffs' state-law claims are based on the same substantive allegations of a price-fixing conspiracy that support their federal claim, and the Court does not agree with defendants that the case presents novel or complex issues of state law or that exceptional circumstances exist here; accordingly, the Court will not decline to exercise supplemental jurisdiction over the state-law claims in this case pursuant to 28 U.S.C. § 1367(c).

Ind.Code § 34–11–2–4 governs statutory claim of conspiracy in restraint of trade); *State ex rel. Leech v. Levi Strauss & Co.,* 1980 WL 4696, at *3 (Tenn. Ch. Ct. Sept. 25, 1980) (applying three-year limitations period under Tenn.Code Ann. § 28–3–105 to price-fixing claim under state antitrust statute).

Nor do plaintiffs dispute in their brief that the class action filing should have given them notice of their claims sufficient to commence the running of the limitations periods—even though defendants did not limit their motions to post–1998 claims, and plaintiffs' brief seems to suggest that plaintiffs understood that defendants' motions were not so limited. In their complaints, however, plaintiffs have alleged that because of defendants' fraudulent concealment of their price-fixing conspiracy, plaintiffs did not discover and could not have discovered the existence of a conspiracy from 1999 through 2004 until November 23, 2004; and that plaintiffs did not discover and could not have discovered the existence of a conspiracy prior to 1999 until December 2007. In asserting their state-law claims, plaintiffs allege that the applicable statutes of limitation have been tolled by both defendants' fraudulent concealment and the filing of the class action in this case. Thus, even if the Court rejects plaintiffs' claim of tolling based on the filing of the class action, as defendants urge, plaintiffs' pre–1999 state-law claims could still survive under the doctrine of fraudulent concealment, because the instant suits were filed within two years of December 2007—assuming plaintiffs can revive their pre–1999 claims in properly-pleaded amended complaints. At present, however, only plaintiffs' post–1998 claims remain, and the remaining claims under Tennessee and Indiana law are subject to dismissal if the applicable limitations periods are not also tolled from the date of the class action filing in November 2004.

Plaintiffs' theory that the filing of the class action tolled the running of the statutes of limitation is derived from federal caselaw. In *American Pipe and Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), the Supreme Court held that where class certification has been denied, the filing of the class action tolls the statute of limitations for purported members of the class who then make timely motions to intervene as named parties. *See id.* at 552–54, 94 S.Ct. 756. In *Crown, Cork and Seal Co. v. Parker,* 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983), the Court extended the tolling rule to apply also to members of the putative class who wished to file individual suits instead of intervening in a failed class action. *See id.* at 353–54, 103 S.Ct. 2392. The Tenth Circuit has held that the *American Pipe* tolling rule also applies to a putative class member who chooses to opt out of a certified class and file an individual action. *See Realmonte v. Reeves,* 169 F.3d 1280, 1284 (10th Cir. 1999).

The Tenth Circuit has instructed, however, that where state law supplies the applicable statute of limitations, a court must look to the tolling law of that particular state to determine whether to apply *American Pipe* tolling. *See State Farm Mutual Auto. Ins. Co. v. Boellstorff,* 540 F.3d 1223, 1230 n. 11 (10th Cir.2008) (citing *Chardon v. Fumero Soto,* 462 U.S. 650, 654–57, 662, 103 S.Ct. 2611, 77 L.Ed.2d 74 (1983)). The issue then becomes whether that state's courts would apply the *American Pipe* class-action tolling rule in a "cross-jurisdictional" context, in which an individual claim is litigated in stated court following the filing of a class action in federal court. The Court thus examines the law of Tennessee and Indiana to determine whether those states have adopted such cross-jurisdictional tolling.

## 1. TENNESSEE LAW

■ The Tennessee Supreme Court has explicitly declined to adopt the doctrine of cross-jurisdictional tolling. *See Maestas v. Sofamor Danek Group, Inc.,* 33 S.W.3d 805, 808 (Tenn.2000). In *Maestas,* a product liability case, the court gave at least three reasons for rejecting the doctrine. *See id.* at 808–09. First, the court noted that the rationale for the tolling rule—without tolling, a single system would be burdened by both the class action and numerous filings to preserve class members' opportunity to file individual suits—did not apply in the cross-jurisdictional context, as the state had no interest in furthering the efficiency and economy of the class-action procedures of another jurisdiction. *See id.* at 808. Second, the court concluded that "[a]doption of the doctrine would run the risk that Tennessee courts would become a clearinghouse for cases that are barred in the jurisdictions in which they otherwise would have been brought;" the court did not wish to sanction the kind of forum shopping that could result solely if Tennessee adopted cross-jurisdictional tolling and thus created an overly generous statute of limitations. *See id.* The court explained a third reason for rejecting the tolling rule as follows:

> Finally, the practical effect of our adoption of cross-jurisdictional tolling would be to make the commencement of the Tennessee statute of limitations contingent on the outcome of class certification as to any litigant who is part of a putative class action filed in any federal court in the United States. It would essentially grant to federal courts the power to decide when Tennessee's statute of limitations begins to run. Such an outcome is contrary to our legislature's power to adopt statutes of limitations and the exceptions to those statutes, and would arguably offend the doctrines of federalism and dual sovereignty. If the sovereign state of Tennessee is to cede such power to the federal courts, we shall leave it to the legislature to do so.

*Id.* at 809 (citations omitted). Because Tennessee does not permit its statutes of limitations to be tolled by a class action filing in federal court, plaintiffs may not invoke the tolling doctrine in this case with respect to their claims under Tennessee law.

Plaintiffs attempt to dismiss *Maestas* as a products liability case, and they argue that the Tennessee Supreme Court would in fact adopt cross-jurisdictional tolling in an antitrust case. Plaintiff rely on *In re Linerboard Antitrust Litigation,* 223 F.R.D. 335 (E.D.Pa.2004), in which a federal district court made that same distinction in permitting cross-jurisdictional tolling with respect to a claim under the Tennessee antitrust statute, in spite of the *Maestas* holding. *See id.* at 344–52. The *Linerboard* court stated that the risk of forum-shopping is not as great in antitrust cases because, "[u]nlike products liability cases which, because of our national economy, could potentially be filed in any state, claims under state antitrust statutes require much greater contacts between the potential claimant and the forum state." *See id.* at 347. The court also concluded that other factors cited by the Tennessee court—judicial economy and the costs of litigation—favor adopting cross-jurisdictional tolling in antitrust cases. *See id.* at 351.

The Court rejects the conclusions by the *Linerboard* court. First, although the *Linerboard* court considered whether Tennessee's (and other states') highest court had considered the doctrine, it also weighed other factors (the federal interest, the similarity of claims to the class action, prejudice to the defendants) in deciding whether to apply the *American Pipe* tolling doctrine. *See id.* at 345. As noted

above, however, Supreme Court and Tenth Circuit law mandates that state law alone must govern the application of a tolling principle to a state's statute of limitations.[9] Moreover, although the risk of forum-shopping may be lessened in an antitrust case, it is not eliminated entirely, and the Tennessee Supreme Court also relied on two other factors for its rejection of cross-jurisdictional tolling—including the fact that exceptions to statutes of limitation are better left to the legislature—that apply regardless of the type of case.

In *Maestas,* the Tennessee Supreme Court did not limit its holding to certain types of cases. Subsequently, in *Tigg v. Pirelli Tire Corp.,* 232 S.W.3d 28 (Tenn. 2007), an employment termination case, the Tennessee Supreme Court reaffirmed the holding of *Maestas,* noting the three reasons it had cited for rejecting cross-jurisdictional tolling. *See id.* at 33. In *Tigg,* moreover, the court even stopped short of adopting *intra-jurisdictional* tolling in Tennessee, as it declined to resolve that issue and resolved the case on another ground. *See id.* at 33–36.

In the face of this caselaw, this Court cannot say that the Tennessee Supreme Court would adopt cross-jurisdictional tolling in an antitrust case. In the absence of a Tennessee decision compelling the opposite result, this Court declines to import a tolling doctrine into Tennessee state law where it previously did not exist. *See Clemens v. DaimlerChrysler Corp.,* 534 F.3d 1017, 1025 (9th Cir.2008) (declining to import cross-jurisdictional tolling into Illinois limitations law); *Wade v. Danek Med., Inc.,* 182 F.3d 281, 287–88 (4th Cir.

1999) (concluding that the Virginia Supreme Court would not adopt cross-jurisdictional tolling). Accordingly, plaintiffs may not avail themselves of *American Pipe* tolling from the date of the class action filing with respect to their Tennessee claims, and the remaining Tennessee claims (based on the period after 1998) are therefore dismissed as time-barred.

## 2. INDIANA LAW

■ Indiana courts have not considered the issue of cross-jurisdictional tolling. Plaintiffs insist that the Indiana Supreme Court would adopt that doctrine in an antitrust case. Again, in the absence of Indiana authority recognizing the doctrine, the Court declines to import a new tolling rule into that state's limitations law. *See In re Vioxx Prods. Liability Litig.,* 2007 WL 3334339, at *6 (E.D.La. Nov. 8, 2007) (refusing to expand Indiana limitations law by recognizing cross-jurisdictional tolling without clear guidance from Indiana courts); *Clemens,* 534 F.3d at 1025; *Wade,* 182 F.3d at 287–88. The Court further notes that only a couple of states appear to have adopted cross-jurisdictional tolling, *see Wade,* 182 F.3d at 287, and the Court is not persuaded that Indiana would necessarily follow such a small minority.[10] Finally, the Court notes that the rationale for the *American Pipe* tolling rule would not actually be served in the present case because the class action did not include the state law claims; class members wishing to assert such claims would need to file individual suits whether or not the state limitations periods were tolled, and therefore no added efficiency would be achieved

9. It is true that the tolling rule's rationale of preventing protective filings by potential opt-outs might be served in cases in which the same federal court hears both the class action and the individual actions. Nevertheless, the Court is bound to apply the tolling law as the Tennessee courts would.

10. Plaintiffs (and the *Linerboard* court) were able to identify courts in only two states that have adopted cross-jurisdictional tolling. *See Vaccariello v. Smith & Nephew Richards, Inc.,* 94 Ohio St.3d 380, 763 N.E.2d 160, 163 (2002); *Staub v. Eastman Kodak Co.,* 320 N.J.Super. 34, 726 A.2d 955, 962–67 (N.J.Super.Ct.App.Div.1999).

by tolling. *See In re Copper Antitrust Litig.*, 436 F.3d 782, 793–94 (7th Cir.2006) (in federal suit, rejecting tolling from time of filing of state class action; because plaintiffs had to file own suit anyway to pursue federal claim, tolling would not promote efficiency).

For these reasons, the Court rules that plaintiffs may not use *American Pipe* tolling with respect to their claims under Indiana law, and the remaining Indiana claims (based on the period after 1998) are dismissed as time-barred.[11]

### B. Statement of a Claim Under Wisconsin Law

Two plaintiffs have asserted claims under Wisconsin's antitrust statutes, Wis. Stat. §§ 133.01 *et seq.* Defendants argue that, under the *Twombly* standards, plaintiffs have not properly pleaded a Wisconsin antitrust claim because they have failed to allege sufficient facts to show that defendants' conduct substantially affected Wisconsin commerce.

The parties agree that the Wisconsin Supreme Court set forth the governing standard in the cases of *Olstad v. Microsoft Corporation*, 284 Wis.2d 224, 700 N.W.2d 139 (2005), and *Meyers v. Bayer AG*, 303 Wis.2d 295, 735 N.W.2d 448 (2007). In *Olstad,* the court, after reviewing the legislature's 1980 revisions to the state's antitrust statutes, held that those statutes could apply to interstate commerce in some circumstances. *Olstad,* 700 N.W.2d at 158. In so concluding, the court noted that the statutes begin with a broad statement of legislative intent, including the following: "It is the intent of the legislature that this chapter be interpreted in a manner which gives the most liberal construction to achieve the aim of competition." *See id.* at 155 (quoting Wis. Stat. § 133.01). The court also noted the broad text of the statutes, which do not permit limiting constructions. *See id.* at 156 (citing Wis. Stat. § 133.03). Finally, the court identified the circumstances in which the antitrust statutes may reach interstate commerce:

> A civil plaintiff filing an action under Wisconsin's antitrust act must allege that (1) actionable conduct, such as the formation of a combination or conspiracy, occurred within this state, even if its effects are felt primarily outside Wisconsin; or (2) the conduct complained of substantially affects the people of Wisconsin and has impacts in this state, even if the illegal activity resulting in those impacts occurred predominantly or exclusively outside this state.

*Id.* at 158 (citation omitted).

In *Meyers,* the Wisconsin Supreme Court reviewed *Olstad* and reaffirmed its "substantially affects" standard. *See Meyers,* 735 N.W.2d at 456–58, 464. The court also held that a plaintiff alleging a violation

---

11. In their original brief, defendants stated that they did not move to dismiss plaintiffs' 1999–2004 claims under Wisconsin law as time-barred in light of Wisconsin's six-year statute of limitations for antitrust actions. *See* Wis. Stat. § 133.18(2). In their response, plaintiffs noted that concession and the lack of any mention of the 1994–98 claims under Wisconsin law. Defendants then argued in a footnote in their reply brief that without tolling from the class action filing, any pre–2002 Wisconsin claims would also be time-barred. The Court rejects defendants' argument for two reasons. First, defendants have not accounted for plaintiffs' theory of tolling based on fraudulent concealment, which would save all Wisconsin claims at this stage. Second, defendants may not seek dismissal of particular claims for the first time in a reply brief. *See, e.g., U.S. Fire Ins. Co. v. Bunge N. Am., Inc.,* 2008 WL 3077074, at *9 n. 7 (D.Kan. Aug. 4, 2008) (court will not consider argument raised for first time in reply brief) (citing *Minshall v. McGraw Hill Broadcasting Co.,* 323 F.3d 1273, 1288 (10th Cir.2003)). Accordingly, the Court does not consider whether Wisconsin recognizes cross-jurisdictional class-action tolling.

of Wisconsin's antitrust statutes must show "that the conduct complained of has impacts in Wisconsin, and not merely nationwide impacts." *See id.* at 460. The court rejected, however, the defendant's suggestion that the impacts on Wisconsin had to be distinguishable from or disproportionate to those on other states. *See id.* at 461.

The *Meyers* court then applied the "substantially affects" standard and concluded that the complaint before it adequately stated an antitrust claim by alleging that thousands in Wisconsin had purchased a best-selling prescription drug at monopolistic prices over a period of several years. *See id.* at 464. The court distinguished *Emergency One, Inc. v. Waterous Co.*, 23 F.Supp.2d 959 (E.D.Wis.1998), in which a federal court had ruled that a plaintiff did not adequately state a claim under Wisconsin's antitrust statutes. *See* 735 N.W.2d at 464. The *Meyers* court found that the "adverse effects" test applied by the federal court was essentially the same test it had adopted in *Olstad. See id.* at 459. In *Emergency One*, the federal court relied on the facts that the complaint had alleged a conspiracy affecting only plaintiff himself, without significant adverse effects on trade and competition within Wisconsin; the plaintiff manufacturer had maintained only one dealership in the state; and the complaint had not indicated the amount of sales in the state by plaintiff or by its competitors, or identified any lost opportunities resulting from the alleged higher prices. *See Emergency One*, 23 F.Supp.2d at 971. In *Meyers*, the Wisconsin Supreme Court reviewed the federal court's conclusions and did not disagree with them, but instead distinguished the complaint before it from the complaint in the federal case. *See Meyers*, 735 N.W.2d at 464.

■ In the present case, plaintiffs do not suggest that they can meet the first prong of the *Olstad* test relating to conduct within Wisconsin. Therefore, plaintiffs must allege and show in this case that defendants' conduct substantially affected not only plaintiffs themselves, but also the people and commerce of Wisconsin.

In their complaints, the two plaintiffs allege that they are located in or have a facility in Wisconsin and that they purchased these products from one or more defendants for use in Wisconsin (although they do not allege that they purchased the products in Wisconsin). The complaints recite the standard that defendants "substantially affected the people and commerce of Wisconsin and had impacts within the State of Wisconsin." Plaintiffs also allege that defendants shipped "millions of dollars" of the products into Wisconsin to plaintiffs "and other consumers in the State of Wisconsin" at artificially high prices.

The Court concludes that these minimal allegations do not satisfy the *Twombly* plausibility pleading standard. The Court gives no weight to plaintiffs' recitation of the *Olstad* standard in the complaint, and plaintiffs' nonconclusory factual allegations do not demonstrate a *substantial* effect on Wisconsin commerce generally. The vague reference to "other consumers" to whom products were shipped is not sufficient in the absence of any facts that could suggest the scope of the impact in Wisconsin as a whole. Because the complaints' factual allegations only really show substantial effects on plaintiffs themselves, the present case is more closely akin to *Emergency One* than to *Meyers*. Therefore, plaintiffs' claims under Wisconsin law are subject to dismissal under Rule 12(b)(6).

Defendants also argue in the alternative that plaintiffs do not state a claim under Wisconsin law because they do not allege injuries proximately resulting from a substantial effect on Wisconsin commerce.

*Olstad* and *Meyers* contain comprehensive analyses of the antitrust statutes by the Wisconsin Supreme Court, but they do not impose any additional injury requirement. As in the case of cross-jurisdictional tolling, the Court is not inclined to import an additional requirement into a state's law without direction from that state's courts. This disinclination is particularly strong in this context in light of the Wisconsin's Supreme Court's emphasis on the inclusive text of the statutes and the stated legislative intent for a liberal construction of those statutes. For these reasons, the Court rejects defendants' arguments relating to an injury requirement under Wisconsin law.

Finally, defendants argue that any attempts by plaintiffs to void contracts made in other states by application of Wisconsin's rescissionary remedy would violate due process. The Court rejects this basis for dismissal of plaintiffs' Wisconsin claims at this stage, as defendants have not analyzed other states' laws or shown that their contracts could not also be void in those other states.

In summary, the Court concludes that plaintiffs have failed to state a claim under Wisconsin law, and defendants' motions to dismiss those claims are granted. Plaintiffs are granted leave, however, to amend their complaints by **September 8, 2009,** to cure their pleading deficiencies and state a claim under Wisconsin law.[12]

## IV. *Claims on Behalf of Unnamed Affiliates*

In their complaints, plaintiffs allege that they maintain this action "both on their own behalf and on behalf of their parents, subsidiaries, affiliates, predecessors-in-in- terest and assigns." Defendants argue that such entities must bring any claim on their own, as parties, and that any claims by plaintiffs on behalf of injured affiliates not named as parties should be dismissed for lack of standing. *See, e.g., Kowalski v. Tesmer,* 543 U.S. 125, 129, 125 S.Ct. 564, 160 L.Ed.2d 519 (2004) (parties must assert their own legal rights). Plaintiffs did not respond directly to this argument in their brief, but merely stated in a footnote that they have not asserted claims on behalf of unnamed entities unrelated to plaintiffs. Of course, that statement does not address whether they have attempted to assert claims of unnamed affiliates. The Court agrees that plaintiffs may not assert the claims of any unnamed parties, whether or not affiliated to them, at least not on the basis of the general statement contained in the complaints. Accordingly, defendants' motions to dismiss are granted to this extent, and the Court dismisses any claims asserted on behalf of unnamed parties.

IT IS THEREFORE ORDERED BY THE COURT THAT certain defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) (Doc. # 913) is **granted in part and denied in part,** as set forth herein. The direct action plaintiffs' antitrust conspiracy claims under federal, state, or European law based on the period from 1994 to 1998 and their entire claims under Wisconsin law are dismissed; however, plaintiffs are granted leave to amend their complaints on or before **September 8, 2009,** to cure those claims' pleading deficiencies. Plaintiffs' claims under Indiana or Tennessee law based on the period after 1998 are dismissed as time-barred. Any claims brought by plaintiffs on behalf of affiliates

---

**12.** In light of the Court's dismissal of all claims under Indiana and Tennessee law, the Court does not address defendants' alternative bases for dismissal of those claims. If claims under those states' statutes for the period from 1994 to 1998 are properly pleaded in amended complaints, such arguments may be asserted and will be resolved accordingly.

that are not named as parties are dismissed.

IT IS FURTHER ORDERED BY THE COURT THAT the motions to dismiss filed by defendant BASF Coordination Center Comm. V (Doc. # 1017) and by individual defendants Jean–Pierre Dhanis and Uwe Hartwig (Doc. # 1019) are **granted in part and denied in part,** consistent with the Court's rulings in this Order, to the extent that the motions merely referred to and incorporated the other defendants' arguments addressed in this Order. Those motions remain pending with respect to all other arguments.

IT IS FURTHER ORDERED BY THE COURT THAT plaintiffs' motion for oral argument (Doc. # 996) is **denied in part,** to the extent that it relates to the issues addressed in this Order. The motion remains pending with respect to argument on defendants' remaining motions to dismiss.

IT IS SO ORDERED.